**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roberto LOPEZ–URBINA; Raul**
**Badillo–Rangel, Defendants–**
**Appellants.**

No. 04–50135.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 2005.

Joseph H. Gay, Jr., Asst. U.S. Atty., San Antonio, TX, for Plaintiff–Appellee.

Larry Chris Iles, Rockport, TX, for Roberto Lopez–Urbina.

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Roberto Lopez–Urbina and Raul Badillo–Rangel were both charged with carjacking (counts 1–3), using and carrying a firearm during a crime of violence (counts 4–6), conspiracy to use and carry a firearm during a crime of violence (count 7), and transportation of stolen vehicles (count 8) in violation of 18 U.S.C. §§ 2119, 924(c) and (o), 2312, and 2. The charges stemmed from two carjackings and one attempted carjacking that occurred in December 2002 in and around Austin, Texas. After a jury trial, they were convicted on all charges. On appeal, Badillo–Rangel challenges his conviction and sentencing. Lopez–Urbina appeals his sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

During the jury trial, evidence introduced by the prosecution established the following: Badillo–Rangel, who was in his late thirties, recruited Jose Canales and Jose Rodriguez, two high school students, to steal vehicles. At some point, Badillo–Rangel became dissatisfied with the number of vehicles Rodriguez and Canales were stealing so he enlisted Lopez–Urbina to assist them. Badillo–Rangel provided Lopez–Urbina with a firearm to use in connection with the thefts. Badillo–Rangel also provided his recruits with a red Suzuki Sidekick.

On December 8, 2002, Lopez–Urbina was driving the Suzuki when he, Rodriguez, and Canales approached a Chevrolet truck in the parking lot of a restaurant in Pflugerville, Texas. Lopez–Urbina banged on the window of the truck, opened the door and pointed a gun at the passenger while one of Lopez–Urbina's cohorts threatened the driver with a knife. Both occupants were ordered to get out of the truck and run. When the driver approached the front of the truck, he turned around to look back. Lopez–Urbina pointed the gun at him and appeared to cock the gun, again instructing the driver to run.

On December 9, 2002, Lopez–Urbina, Rodriguez, and Canales spotted and followed a Ford F–150 truck to a house. Badillo–Rangel had instructed the men to look for a Ford F–150 truck. Lopez–Urbina and Rodriguez attempted to steal the

truck. Lopez–Urbina pointed a gun at the driver, and instructed the driver to exit the truck and give him the keys. Several of the driver's family members ran out of the house to see what was going on and began screaming. Lopez–Urbina fired the gun when it appeared someone was attempting to read the license plate of the Suzuki he had been driving. The men were unable to start the truck so they left without it.

Shortly thereafter, the men spotted a Dodge Ram truck. When the truck stopped in front of a house, Lopez–Urbina and Rodriguez approached the truck. Lopez–Urbina pointed a pistol at a person who was waiting in the truck and ordered him to get out. On Badillo–Rangel's instructions, Lopez–Urbina informed Rodriguez where to take the stolen vehicle. Rodriguez and Canales drove the truck to a designated drop off spot at an apartment complex. Canales then took the license plates off of the Dodge Ram and switched them for license plates on a truck in the parking lot.

On December 10, 2002, an Austin police officer found the license plates belonging to the Chevrolet truck. The Chevrolet's plates were discovered on an unidentified truck in an apartment complex. The plates belonging to the unidentified truck were recorded entering Mexico the previous evening on a vehicle driven by Alexis Carranza. Carranza was identified by a traffic citation he received in Texas close to the Mexican border. The citation led the police to Carranza's apartment. Carranza later testified that Badillo–Rangel hired him to drive stolen trucks to Mexico. He stated that Badillo–Rangel and Lopez–Urbina would leave trucks at his residence and Carranza would then drive the trucks to Mexico. Upon delivery in Mexico, Carranza would collect money that was to be returned to Badillo–Rangel. Badillo–Rangel also arranged for Carranza's transportation back to Texas.

The prosecution also offered the testimony of a local car dealer. The dealer testified that Badillo–Rangel told him that Lopez–Urbina would steal trucks and then the two of them would sell the trucks in Mexico. Badillo–Rangel had asked for the dealer's assistance in transporting the stolen trucks, but the dealer refused because he was already on probation.

The jury found Lopez–Urbina and Badillo–Rangel guilty of all eight counts charged in the indictment. Lopez–Urbina was sentenced to concurrent terms of 135 months of imprisonment for counts one, two, three, and seven; 120 months of imprisonment for count four, to run consecutively to count one; 300 months of imprisonment as to counts five and six, consecutive to the other sentences; and 120 months of imprisonment for count eight, to run concurrently with count one. Lopez–Urbina was also sentenced to three years of supervised release as to each of the eight counts, with all terms to be served concurrently. Badillo–Rangel was sentenced to concurrent terms of 120 months of imprisonment as to counts one, two, three, seven, and eight; 84 months of imprisonment as to count four, to be served consecutively to count one; and 300 months of imprisonment as to counts five and six, consecutive to the other sentences. Badillo–Rangel was also sentenced to three years of supervised release as to each of the eight counts, with all terms to be served concurrently. Lopez–Urbina's and Badillo–Rangel's notices of appeal were timely filed.

## DISCUSSION

### I.

We first address Badillo–Rangel's challenge to his conviction. Badillo–Rangel

argues that the district court erred in denying his motion for judgment of acquittal on the charge of aiding and abetting the use and carrying of a firearm during a crime of violence. At the close of the prosecution's case, Badillo–Rangel made a Rule 29 motion for judgment of acquittal because he argued that the prosecution failed to produce sufficient evidence to sustain a conviction on all counts against him. He renewed his motion prior to the charges being submitted to the jury.

 We review the district court's denial of a motion for judgment of acquittal *de novo*. *United States v. Floyd,* 343 F.3d 363, 370 (5th Cir.2003) (citation omitted). We will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict. *Id.* (citation omitted).

 In reviewing a challenge to a conviction based on the alleged insufficiency of the evidence, we must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted). "We do not consider whether the jury correctly determined guilt or innocence, [only] whether the jury made a rational decision." *United States v. Rivera,* 295 F.3d 461, 466 (5th Cir.2002) (citation omitted); *see also United States v. Moser,* 123 F.3d 813, 820 (5th Cir.1997) ("The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.").

" 'Our review of the sufficiency of the evidence does not include a review of the weight of the evidence or of the credibility of the witnesses.' " *Floyd,* 343 F.3d at 370 (quoting *United States v. Myers,* 104 F.3d 76, 78–79 (5th Cir.1997)). Indeed, because the evidence must be viewed in the light most favorable to the verdict, the evidence offered by the prosecution should be assumed to be true. *United States v. Robertson,* 110 F.3d 1113, 1117 (5th Cir.1997). " '[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt.' " *Clark v. Procunier,* 755 F.2d 394, 396 (5th Cir.1985) (quoting *Cosby v. Jones,* 682 F.2d 1373, 1383 (11th Cir. 1982)).

 The specific charge that Badillo–Rangel attacks is aiding and abetting the use and carrying of a firearm during a crime of violence in contravention of 18 U.S.C. §§ 2 and 924(c). The indictment asserted that Badillo–Rangel aided and abetted Lopez–Urbina in the use and carrying of a firearm during the December 2002 carjackings. To convict a defendant of aiding and abetting a crime under § 2, " 'the Government must prove (1) that the defendant associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed.' " *United States v. Sorrells,* 145 F.3d 744, 753 (5th Cir.1998) (quoting *United States v. Gallo,* 927 F.2d 815, 822 (5th Cir.1991)). " 'Association means that the defendant shared in the criminal intent of the principal.' " *Id.* (quoting *United States v. Salazar,* 66 F.3d 723, 729 (5th Cir.1995)). "Participation means that the defendant engaged in some affirmative conduct designed to aid the venture." *Id.* (citation omitted). "The government must

therefore prove the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime." *United States v. Pipola,* 83 F.3d 556, 562 (2nd Cir.1996) (citation omitted).

 Specifically, as it relates to a conviction for aiding and abetting a § 924(c)(1) offense, the prosecution must prove that the defendant "act[ed] with the knowledge or specific intent of advancing the 'use' of the firearm." *Sorrells,* 145 F.3d at 753 (citation omitted). "Of course, the jury is entitled to draw reasonable inferences of knowledge or intent from the actions of the defendant." *Id.* at 754. "In addition to requiring proof of knowledge or intent for a conviction of aiding and abetting, 'there must also be proof that the defendant performed some affirmative act relating to the firearm.'" *Id.* (citation omitted). In other words, a defendant's knowledge of the underlying offense or knowledge that a gun will be used in the commission of the underlying offense is not sufficient to sustain a conviction; there must be evidence that the defendant took some action to facilitate or encourage the use or carrying of a firearm. "The link to the firearm is necessary because the defendant is punished as a principal for 'using' a firearm ... and therefore must facilitate in the 'use' of the firearm rather than simply assist in the crime underlying the § 924(c)(1) violation." *Id.* (citation omitted).

 Because Badillo–Rangel was charged with aiding and abetting Lopez–Urbina, the critical question is whether there is evidence in the record to support a finding that Badillo–Rangel took some affirmative action to facilitate or encourage Lopez–Urbina's use of the firearm during the carjackings. Badillo–Rangel argues that while the prosecution introduced evidence that established that at some time he gave Lopez–Urbina a gun allegedly for the purpose of using it during the commission of the carjackings, such evidence in and of itself is insufficient to establish that he aided and abetted a § 924(c) offense. Badillo–Rangel avers that simply because he gave Lopez–Urbina a gun at some indeterminate time and then Lopez–Urbina subsequently used a gun during a carjacking is inconsequential. He contends that the evidence adduced at trial established that Lopez–Urbina, not he, owned and possessed the gun that was used during the carjackings. He further asserts that because there is insufficient evidence to positively connect the gun he gave Lopez–Urbina to the gun used during the carjackings, his motion for judgment of acquittal should have been granted.

We disagree. The evidence adduced by the prosecution was sufficient to convict Badillo–Rangel of aiding and abetting a § 924(c)(1) offense. Jose Jesus Delfierro, a cousin of one of Badillo–Rangel's teenage recruits, testified that he had a meeting with Badillo–Rangel and Lopez–Urbina in which they offered him a position in their gang of car thieves. At this meeting, Badillo–Rangel took a gun from Lopez–Urbina, showed it to Delfierro, and stated that he would give Delfierro a gun to use to steal cars. In addition, Jose Rodriguez testified that he witnessed Badillo–Rangel give Lopez–Urbina a gun for the stated purpose of using it during the carjackings. Rodriguez also testified that the gun Badillo–Rangel provided was used by Lopez–Urbina during the carjackings. Additionally, various witnesses observed Lopez–Urbina carrying a gun that matched the description of the pistol Badillo–Rangel gave Lopez–Urbina. The prosecution's witnesses clearly established that Badillo–Rangel both had the specific intent to ad-

vance the use of the firearm and did facilitate the use of a firearm, since the jury could infer that he supplied the firearm that was used during the underlying offenses. *Cf. Pipola,* 83 F.3d at 564–65 (finding that a jury could infer the defendant encouraged the carrying of firearms, even if he did not personally give the firearms to his co-conspirators, because the defendant was the leader of the group and authored the plans for the robberies). Viewing the evidence in the light most favorable to the verdict, the evidence in the record is sufficient for a rational juror to find that Badillo–Rangel encouraged or facilitated Lopez–Urbina's carrying or use of a firearm during the carjackings. Therefore, a juror could conclude that the prosecution proved the essential elements of the aiding and abetting charge against Badillo–Rangel beyond a reasonable doubt. Accordingly, we affirm Badillo–Rangel's conviction.

## II.

Badillo–Rangel asserts the district court made several points of error pertaining to his sentencing. He argues that: (1) the district court erred in enhancing his sentence under § 924(c)(1)(C) by counting his convictions under count five and six as "second or subsequent" to his conviction under count four; (2) his Sixth Amendment rights were violated because the district court increased his sentence based on facts not found by the jury; and (3) the district court erred in refusing to group the firearm conspiracy with the carjacking counts.

We note that Badillo–Rangel did not urge in the district court that his sentence violated the Sixth Amendment and he raises it for the first time on appeal. After his trial and sentencing, the Supreme Court issued its decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held that a state prisoner's Sixth Amendment rights to a jury trial were violated because his sentence was imposed based on facts not supported by the jury verdict nor admitted by the defendant under Washington's mandatory Guidelines system. Although Badillo–Rangel was sentenced pursuant to the United States Sentencing Guidelines, he argued in his initial brief submitted to this court that under *Blakely* his sentence violated his Sixth Amendment rights.

■■■■■ Prior to oral arguments in this appeal, the Supreme Court announced its decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Booker* extended the principles in *Blakely* to the United States Sentencing Guidelines and held that a sentence imposed in a mandatory Guideline regime violated a defendant's Sixth Amendment right to a jury trial. *United States v. Mares,* 402 F.3d 511, 518 (5th Cir.2005). The *Booker* court remedied the constitutional infirmity by making the formerly mandatory Guidelines advisory and provided that appellate courts will review sentencing decision only for "unreasonableness." *Id.* Although *Booker* changed the Guidelines scheme so that it was no longer a mandatory duty on the sentencing court to follow them, the court still must "consider" the Guidelines in determining its sentencing decision. *Id.* at 518–19. "This duty to 'consider' the Guidelines will ordinarily require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range." *Id.* at 519. In addition, under an advisory system "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guidelines sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *Id.* "If a sentenc-

ing judge exercises her discretion to impose a sentence with a properly calculated Guidelines range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines." *Id.* We also stated that "it will be rare for a reviewing court to say" that a sentence imposed within a properly calculated Guidelines range is unreasonable. *Id.*

At our request, Badillo–Rangel filed a supplemental brief assessing the affect of the holding in *Booker* to his appeal. We address each of his errors in turn.

### A.

■ Badillo–Rangel argues that the district court erred in enhancing his sentence on counts five and six. Under § 924(c)(1)(C), if the defendant's conviction is "a second or subsequent conviction" on possession of a firearm during and in relation to a violent crime, the defendant "shall be sentenced to a term of imprisonment not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i). Badillo–Rangel's sentence enhancement for a "second or subsequent conviction" was based on his conviction on count four in the same proceedings. Before sentencing, Badillo–Rangel objected to the recommended 25 year mandatory minimum sentence for counts five and six because he argued that those counts should not be considered subsequent to his firearm conviction on count four. The district court found that Badillo–Rangel's argument was expressly foreclosed by Supreme Court precedent. *See Deal v. United States,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). However, Badillo–Rangel asserts that the Supreme Court authority on this point has since been implicitly overruled by *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), *Jones v. United States,* 526 U.S.

227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Specifically, Badillo–Rangel argues that the Supreme Court made it clear in *Almendarez–Torres* and *Jones* that sentencing enhancements based on prior convictions are meant to address recidivism, and therefore, a prior conviction should be interpreted as a judgment that was rendered prior to the commission of the offense at issue. *Apprendi* stated that, except for prior convictions, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. Badillo–Rangel argues that the reasons the *Apprendi* Court held that prior convictions do not have to be submitted to a jury are because (1) the Court's Sixth Amendment concerns were mitigated by the procedural safeguards attached to prior convictions, and (2) a defendant could not challenge the accuracy of the prior conviction in his case. *Apprendi,* Badillo–Rangel asserts, reinforces that prior convictions refer to judgments that took place prior to the proceedings at issue. Hence, a § 924(c)(1)(C) "second or subsequent conviction" enhancement cannot be based upon a conviction rendered during the course of the same proceedings. In addition, he argues that *Apprendi* requires the jury to find that counts five and six were subsequent offenses to count four, and therefore, the fact that count four is a "subsequent conviction" should have been included in the indictment.

■ Prior to *Booker,* this court reviewed the district court's interpretation and application of the Guidelines *de novo. United States v. Villegas,* 404 F.3d 355, 359 (5th Cir.2005) (citation omitted). The Supreme Court's remedy opinion in *Book-*

*er* excised the statutory provision that had set forth the various standards for reviewing sentencing decisions and instead held that federal sentences would simply be reviewed for "unreasonableness." *Id.* Nevertheless, we have held that we will continue after *Booker* to review the district court's interpretation and application of the Guidelines *de novo* for sentences imposed under the pre-*Booker* mandatory Guidelines regime. *Id.*

As Badillo–Rangel acknowledges, his argument was expressly rejected by the Supreme Court in *Deal v. United States.* Deal was convicted of six counts of carrying a firearm under § 924(c)(1). 508 U.S. at 130, 113 S.Ct. 1993. The district court sentenced Deal to 5 years imprisonment on the first § 924(c)(1) count and to 20 years on each of the five other counts. *Id.* at 131, 113 S.Ct. 1993. Deal argued that "conviction" means final entry of judgment on guilt, and therefore, a "second or subsequent conviction" cannot be found in the same proceeding, because the conviction on the first count was simply a finding of guilty; no final entry of judgment had been made. *Id.* The *Deal* Court disagreed and held that "conviction" in § 924(c)(1) is a term of art which refers to the finding of guilt by a judge or jury that precedes the entry of a final judgment on the conviction. *Id.* at 132, 113 S.Ct. 1993. Accordingly, the Court upheld Deal's sentence because § 924(c)(1)(C) allows subsequent convictions, for the purpose of the sentencing enhancement, to be subsequent to convictions in the same proceedings. *Id.* at 137, 113 S.Ct. 1993.

This court has recognized that *Deal* is valid precedential authority even after the Supreme Court's rulings in *Almendarez–Torres, Jones,* and *Apprendi. See United States v. Smith,* 296 F.3d 344, 348–49 (5th Cir.2002). More importantly, and most fatal to Badillo–Rangel's arguments, this court has found that *Apprendi* does not apply to enhancements of a mandatory minimum. *Id.* In *Smith,* the defendants presented the same issue Badillo–Rangel brings here, namely, that the district court erred in enhancing their sentence based upon a conviction subsequent to another conviction found in the same proceedings. The *Smith* court rejected the defendants' argument that *Apprendi* required that the jury make specific findings as to whether the multiple counts qualified as subsequent offenses under § 924(c)(1)(C). *Id.* The *Smith* court averred that "[b]ecause *Apprendi* does not apply to increases of the mandatory minimum, *Harris, Deal,* and *McMillan* preclude the Appellants' argument." *Id.* at 349; *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding a statute that permitted a sentencing court to find facts that raised the mandatory minimum sentence); *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (holding that the decision in *McMillan* survives *Apprendi* ). We cannot hold that *Deal* has been overruled absent express authority from the Supreme Court. Moreover, our holding in *Smith* precludes a finding that Badillo–Rangel's sentencing enhancement contravened *Apprendi.*

**B.**

Next, Badillo–Rangel asserts the district court increased his sentence above that authorized by the jury's verdict in violation of the Sixth Amendment. Badillo–Rangel argues that the jury verdict did not support a finding that: (1) he had a leadership role in the charged offenses, (2) the firearms utilized in the commission of the crimes were stolen, and (3) his offenses resulted in losses over $10,000. He contends that the extra-judicial factual findings increased his offense level from 25 to 31, and as a result, increased his sentenc-

ing range from 57–71 months to 108–135 months.

 Upon review of the jury's findings and the district court's sentencing decision, we find that the court did enhance Badillo–Rangel's sentence beyond the maximum prescribed range authorized by the jury's verdict or the facts admitted by the defendant. Pursuant to *Booker*, we hold that the district court violated Badillo–Rangel's Sixth Amendment rights. *See Booker*, 125 S.Ct. at 755–56. As previous noted, Badillo–Rangel did not make a Sixth Amendment objection to his sentence in the district court. Therefore, the *Booker* error in his case is reviewed for plain error. *Mares*, 402 F.3d at 520 (citation omitted). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* (citation and internal quotations omitted). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and quotations omitted). Under *Mares*, a *Booker* error of this type satisfies the first two prongs of the plain error analysis. *Id.* Thus, the material question is whether the error affected Badillo–Rangel's substantial rights.

 In order to meet his burden of persuasion, and show that the error affected his substantial rights, Badillo–Rangel must demonstrate that the error affected the outcome of the district court proceedings. *Id.* at 521 (citations omitted). Badillo–Rangel "must demonstrate a probability 'sufficient to undermine confidence in the outcome.'" *Id.* (citation omitted). He has not met his burden if it is "equally plausible that the error worked in favor of the defense," or "if the effect of the error is

uncertain so that we do not know which, if either, side it helped[.]" *Id.* (citation and quotations omitted).

 After carefully reviewing the parties' arguments and the record in this case, we find that Badillo–Rangel has not established that the outcome of the district court proceedings would have been any different under an advisory sentencing system. Because Badillo–Rangel has failed to meet his burden of persuasion, we decline to find that the district court committed plain error.

### C.

Finally, Badillo–Rangel charges that the district court erred in grouping count seven, conspiring to use and carry a firearm during a crime of violence, with count eight, aiding and abetting the transportation of stolen vehicles in interstate commerce. He argues that the firearm conspiracy count should have been grouped with the carjacking counts. The district court entertained and rejected Badillo–Rangel's objection to the Pre–Sentence Report (PSR) on this basis. The district court subsequently adopted the recommendation in the PSR to group the firearm conspiracy count and the transportation of stolen vehicles count. Badillo–Rangel contends that due to the stacking rules for multiple count offenses, the improper grouping had the effect of increasing his offense level from 30 to 31.

 This court reviews "the district court's application of the Sentencing Guidelines grouping rule" *de novo*. *United States v. Solis*, 299 F.3d 420, 459 (5th Cir.2002); *see also Villegas*, 404 F.3d at 359 (explaining that for sentences to which *Booker* is retroactively applied, we continue after the Supreme Court's decision in *Booker* to review the district court's interpretation and application of the Guidelines

*de novo*). "On this review, [t]he sentence will be upheld if it was imposed as the result of a correct application of the guidelines to factual findings which are not clearly erroneous." *Solis*, 299 F.3d at 459 (alteration in original) (internal quotation marks omitted).[1]

■ Pursuant to § 3D1.2 of the Guidelines, "[a]ll counts involving substantially the same harm *shall* be grouped together into a single Group." U.S.S.G. § 3D1.2 (2002) (emphasis added). Section 3D1.2 provides four categories, subsections (a)-(d), defining when counts involve substantially the same harm. The district court grouped count seven, the firearm conspiracy count, and count eight, the transportation of stolen vehicles, under subsection (d) of § 3D1.2. Section 3D1.2(d) divides offenses into three categories: those explicitly listed as being susceptible to grouping under that subsection, those that explicitly cannot be grouped under that subsection, and those offenses which are subject to grouping under subsection (d) on a case-by-case basis. *Ballard*, 919 F.2d at 256–57. The firearm conspiracy count is covered by § 2K2.1, which is explicitly provided for in § 3D1.2(d) as being susceptible to grouping under that subsection. The

count for transportation of stolen vehicles is covered by guideline § 2B1.1, which is also explicitly provided for in § 3D1.2(d) as an offense that may be grouped under that provision. However, grouping is not mandatory or automatic simply because a defendant is charged with an offense that falls under a guideline listed in § 3D1.2(d). *See Solis*, 299 F.3d at 459–60 (rejecting the defendant's argument that his offense should have been grouped because, inter alia, the offense guideline was explicitly covered in § 3D1.2(d)). *Accord United States v. Lenoci*, 377 F.3d 246, 253 (2d Cir.2004).

■ Under subsection (d), counts have substantially the same harm, and thus must be grouped together, "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate of harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." The commentary to § 3D1.2 provides further guidance. The commentary states that offenses involving different offense guidelines are grouped together if "the offenses are of the same general type

---

1. In some cases, this court has held that where the grouping determination "depends on factual and case-specific conclusions ... [a] reviewing court must [ ] give 'due deference' to the district court, and respect the informed judgments made by that court." *United States v. Pope*, 871 F.2d 506, 509 (5th Cir.1989) (citing *United States v. Mejia–Orosco*, 868 F.2d 807, 808 (5th Cir.1989)) (other citations omitted) (decisions involving offenses that are not explicitly enumerated under § 3D1.2(d), and thus fall under the categories of offenses that are grouped on a case-by-case basis, are to be given due deference); *see also Gallo*, 927 F.2d at 824; *United States v. Ballard*, 919 F.2d 255, 257 (5th Cir.1990). *Accord United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989); *United States v. Williams*, 340 F.3d 1231, 1235–43 (11th Cir.

2003). However, this standard of review was predicated on 18 U.S.C. § 3742(e), which provided: "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and ... *shall give due deference to the district court's application of the guidelines to the facts.*" 18 U.S.C. § 3742(e)(2002)(emphasis added). In order to cure the constitutional infirmity of the mandatory Sentencing Guidelines, the Supreme Court excised § 3742(e) from the Federal Sentencing Act. *Booker*, 125 S.Ct. at 764–68. Thus, reference to the statutory "due deference" language from now-excised § 3742(e) is no longer necessary post-*Booker*.

and otherwise meet the criteria for grouping under this subsection." U.S.S.G. § 3D1.2, cmt. n. 6. The commentary elucidates that whether offenses are of the "same general type" is to be construed broadly. For example, larceny, embezzlement, forgery, and fraud could be considered the same general type of offense. *United States v. Patterson*, 962 F.2d 409, 416 (5th Cir.1992) (quoting the former U.S.S.G. § 3D1.2, cmt. n. 6 (1988)). Nonetheless, the grouping of the firearm conspiracy count and the transportation of stolen vehicles count was inappropriate here. The transportation of stolen vehicles in interstate commerce is not the "same general type" of offense as the conspiracy to use and carry a firearm during a crime of violence. *Cf. Patterson*, 962 F.2d at 415–17 (holding that neither the receipt or possession of a stolen automobile nor the alteration of vehicle identification numbers is the same general type of offense as obtaining money by false pretenses). Therefore, the district court erred in grouping count seven, the firearm conspiracy, with count eight, the transportation of stolen vehicles.

Badillo–Rangel contends that the firearm conspiracy should have been grouped with the carjacking counts. Offenses covered by § 2B3.1, the guideline that covers the carjacking counts, are included among the offenses that cannot be grouped under § 3D1.2(d). Thus, the carjacking counts could not be grouped under subsection (d). Section § 3D1.2(d) states that: "[e]xclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection." Therefore, although the grouping of the carjacking offense and the firearm conspiracy offense are inappropriate under § 3D1.2(d), the offenses could still be grouped if the counts can be appropriately grouped under subsections (a)-(c).

Here, the only other subsection that may apply to allow the firearm conspiracy and carjacking counts to be grouped is subsection (b). Section 3D1.2(b) provides that all counts shall be grouped together in a single group: "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan[.]" U.S.S.G. § 3D1.2. Badillo–Rangel argues that subsection (b) fits the facts of his case and, therefore, the conspiracy count and the carjacking counts are appropriate for grouping under this subsection.

 It is clear that, for each carjacking count of which Badillo–Rangel was convicted, the conspiracy to use a firearm during the commission of that carjacking was connected by a common criminal objective, and constituted part of a common scheme or plan, to carry out the carjacking. Moreover, when one ponders who was harmed by the conspiracy to carry a firearm during the course of the carjackings and who was harmed by the carjacking itself, it is incontrovertible that the victims of the offenses were the same. Section 3D1.1 mandates that "[w]hen a defendant has been convicted of more than one count, the court *shall:* (1) [g]roup the counts resulting in conviction into distinct Groups of Closely Related Counts . . . ." U.S.S.G. § 3D1.1(a)(1) (emphasis added). Section 3D1.2 further provides that "counts involving substantially the same harm *shall* be grouped." Use of the word "shall" in the statute indicates that Congress intended grouping to be mandatory if the appropriate requirements are met. *See Matter of DP Partners Ltd. Partnership*, 106 F.3d 667, 670–71 (5th Cir.1997); *see also Manatee County, Fla. v. Train*, 583 F.2d 179 (5th Cir.1978) (holding that "shall" generally indicates a mandatory intent unless a convincing argument to the

contrary is made). Because the firearm conspiracy count and the carjacking counts are closely related counts as defined by § 3D1.2(b), it was error for the district court to not group the counts together.

Although the Supreme Court's decision in *Booker* excised the provision of the Guidelines that made it mandatory, 125 S.Ct. at 764, the district court still must calculate the defendant's proper Guidelines range before determining the ultimate sentence it will impose. *Mares*, 402 F.3d at 518–19. In order to calculate Badillo–Rangel's proper sentencing range under the Guidelines, the district court was required to treat the firearm conspiracy count as three separate conspiracy counts and to group each conspiracy count with its corresponding carjacking count, for a total of three carjacking groups. *See United States v. Landerman*, 167 F.3d 895, 898 (5th Cir.1999) ("A defendant convicted of a conspiracy to commit more than one offense is treated as if he had been convicted on a separate count of conspiracy for each underlying crime."); *see also* U.S.S.G. § 3D1.2, cmt. n.8.

The district court's grouping determination set Badillo–Rangel's offense level at 31 and his sentencing range at 108 to 135 months for counts one, two, three—the carjacking counts—and count seven—the firearm conspiracy. Badillo–Rangel was sentenced to concurrent terms of 120 months of imprisonment as to counts one, two, three and seven. If the district court had grouped the firearm conspiracy with the carjacking counts, the Government concedes Badillo–Rangel's offense level would have been 30 and his sentencing range would have been 97 to 121 months for counts one, two, three, and seven.

Because Badillo–Rangel's objection was preserved at trial, we review the record *de novo* to determine whether the district court's error was harmless.

*United States v. Ahmed*, 324 F.3d 368, 374 (5th Cir.2003). An "error is harmless only if it did not affect the selection of the sentence imposed." *Id.* (citation omitted). The Government, as the party seeking to uphold the sentence, bears the burden of demonstrating that the error was harmless. *United States v. Wheeler*, 322 F.3d 823, 827 (5th Cir.2003). The district court's error resulted in Badillo–Rangel being sentenced under a higher sentencing range than the correct sentencing range. As the Government notes, the sentence Badillo–Rangel received still fell within the correct sentencing range that would have been applicable if the firearm conspiracy had been grouped with the carjacking counts. However, the Government's attempt to rely on this point does not satisfy its burden to prove beyond a reasonable doubt that the district court would have imposed the same sentence under the lower Guidelines range. "Even when . . . the same sentence is included in both the correct and incorrect sentencing ranges, the error is harmless only if we are persuaded—either by the party seeking to uphold the sentence through application of the harmless error analysis, or by our own independent review of the record—that the district court would have imposed the same sentence absent the erroneous factor." *Wheeler*, 322 F.3d at 826–27 (quoting *United States v. Tello*, 9 F.3d 1119, 1131 (5th Cir.1993)).

The Government argues that Badillo–Rangel has failed to point to evidence in the record that demonstrates that the district court's sentence would be different on remand and therefore, he is not entitled to re-sentencing. However, it is the Government's burden, not Badillo–Rangel's, to prove that the sentence imposed would be the same. *See United States v. Pineiro*, 410 F.3d 282, 285 (5th Cir.2005). This court previously rejected a similar argu-

ment in *United States v. Pineiro.* In *Pineiro,* the defendant had preserved his *Booker* objection to his sentence and the court reviewed the district court's *Booker* error for harmless error. *Id.* The Government argued that in order to be entitled to re-sentencing under harmless error review, Pineiro had to show that the district court would have imposed a lower sentence if presented with a discretionary, rather than mandatory, Guidelines scheme. *Id.* at 286. This court stated:

> Although this argument would be persuasive under plain-error review, this argument fails to show that the preserved error was harmless. It is the government that must show that the sentencing judge would have imposed the same sentence under an advisory sentencing scheme. The judge's silence as to whether or not he would have imposed a different sentence under an advisory regime does not satisfy this burden. If we were to accept this argument to find that the error was harmless, we would effectively be relieving the government of its burden and placing it on the defendant.

*Id.* at 286. As in *Pineiro,* the Government in this instance has the burden to prove that the district court's error was harmless-here, by showing that the district court would have imposed the same sentence under the correct range. Badillo–Rangel's inability to point to evidence in the record that the district court would have imposed a different sentence if presented with a lower range is irrelevant under harmless error analysis. Because it is unclear whether the district court would have imposed the same sentence, the error cannot be considered harmless. *See Wheeler,* 322 F.3d at 827 (sentencing error not harmless where Government made no attempt to persuade court that sentence would have been the same and nothing in the record indicated how the district court

arrived at the sentence); *see also Ahmed,* 324 F.3d at 374. The Government has not met its burden of persuasion. Therefore, we vacate Badillo–Rangel's sentence and remand to the district court for re-sentencing.

### III.

We now turn our attention to Lopez–Urbina's sole issue on appeal. Lopez–Urbina contends that the district court erred in enhancing his offense level based on the court's finding that he had a managerial or supervisor role in the charged offenses. The district court assessed a three level increase in Lopez–Urbina's offense level, pursuant to § 3B1.1 of the Sentencing Guidelines, because the district court found that he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).

Lopez–Urbina's trial and sentencing occurred prior to the Supreme Court's decision in *Booker,* which altered the sentencing scheme under the Guidelines and made the system advisory rather than mandatory upon sentencing courts. *Mares,* 402 F.3d at 518. We invited Lopez–Urbina to submit a supplemental brief that would examine the effect on his appeal of the Supreme Court's decision in *Booker.* Lopez–Urbina did not submit a supplemental brief on *Booker,* and he never argued that the district court committed a *Booker* error when sentencing him. Therefore, we will not review for *Booker*-error and, instead, we will simply apply our former standard of review.

We review for clear error a sentencing court's factual determination that a defendant is subject to enhancement. *United States v. Cooper,* 274 F.3d 230, 238 (5th Cir.2001). "A factual finding

is not clearly erroneous if it is plausible in light of the record read as a whole." *Id.* Furthermore, a district court may adopt facts contained in a PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *Id.* at 239.

Lopez–Urbina contends that the Government's assertion that Badillo–Rangel was dissatisfied with the number of vehicles being stolen by Rodriguez and Canales and, as a result, sent Lopez–Urbina to assistance them, is insufficient to justify finding that he was a manager or supervisor. He contends that the Government's version of events paint him as a co-participant on equal footing with Rodriguez and Canales; a "foot soldier" rather than a manager.

The testimony of the criminal enterprise's members and the evidence adduced at trial represent Lopez–Urbina as Badillo–Rangel's "primary associate" and confidante, who supervised the other criminal participants, told them what vehicles to target, told them where to take the stolen vehicles, and, according to one participant, intimidated them into participating in the criminal enterprise. However, even if Lopez–Urbina did not issue orders, as he asserts, the enhancement may be applicable nonetheless for "a defendant who [does] not organize, lead, manage, or supervise another participant" if the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, comment n.2. A careful review of the record shows that the evidence also established that Lopez–Urbina had an elevated role in the management of the stolen property, and in sharing in the fruits of the criminal enterprise. Lopez–Urbina retained control over the stolen vehicles even after the other participants' role in the enterprise had ceased, and testimony indicated that the vehicles were sold in Mexico on both his and Badillo–Rangel's behalf. Therefore, we do not find that the district court was clearly erroneous in enhancing Lopez–Urbina's offense level for having a managerial role in the charged offenses. Lopez–Urbina's sentence is affirmed.

## CONCLUSION

For the foregoing reasons, we affirm Lopez–Urbina's sentence. We affirm Badillo–Rangel's conviction, vacate Badillo–Rangel's sentence and remand for re-sentencing consistent with this opinion.

AFFIRMED In PART, VACATED and REMANDED.