IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-40314
Conference Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FELIX CANTU-ONTIVEROS

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:07-CR-183-1

Before HIGGINBOTHAM, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Felix Cantu-Ontiveros (Cantu) pleaded guilty, pursuant to a plea agreement, to being found in the United States following deportation and to transporting an illegal alien. The presentence investigation report (PSR) treated the two counts of Cantu's conviction as separate groups under the multiple-count provisions of U.S.S.G. §§ 3D1.1-3D1.4 (2006), resulting in a higher combined offense level and, therefore, a higher guidelines range of imprisonment. At

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentencing, the district court granted the government's U.S.S.G. § 5K1.1 motion for a downward departure and sentenced Cantu below the guidelines range to 51 months of imprisonment.

On appeal, Cantu argues that the district court erred by treating the two counts of his conviction as not closely related and, therefore, as separate groups requiring application of the combined offense level provision. *See* §§ 3D1.2, 3D1.4. He asserts that, had the district court treated the two counts as related and not as separate groups, it would have calculated a lower guidelines range of imprisonment and departed by the same degree from that range to a lower sentence of imprisonment.

The PSR, which Cantu confirmed was factually correct, shows that Cantu's parents, his ex-spouse, his son, and an individual with whom he had a common-law relationship until the date of his arrest live in the United States. Cantu spent the majority of his youth in the United States, went to school primarily in the United States, and was employed primarily in the United States in the 12 years preceding his arrest. Cantu was deported in October 2006, but reentered illegally in December 2006. In the weeks preceding his arrest in February 2007, Cantu was working with a construction company in Texas. On his way to that job on the morning of his arrest, Cantu stated that he saw a friend guiding two aliens. The friend asked Cantu if he would drive the aliens to the nearest store, which Cantu agreed to do. He was then stopped with the aliens and arrested.

Cantu's familial network in the United States, his reentry months prior to the alien-transportation offense, and the fact that Cantu had a daily job to which he was en route at the time of his arrest, all indicate that transporting illegal aliens was not the objective of Cantu's illegal reentry. Cantu agreed to transport the aliens, by his own account, on the spur of the moment when he saw his friend. Therefore, the action could not have been part of his plan when he illegally reentered the United States several months earlier. *Cf. United States*

*v. Lopez-Urbina*, 434 F.3d 750, 764 (5th Cir. 2005) (determining that a conspiracy to use a firearm during the commission of a carjacking and the carjacking itself were part of the same criminal scheme). Because the two counts, Cantu's illegal presence in the United States and his transport of the aliens, were not part of a common scheme or plan, they were not closely related. *See* § 3D1.2(b). Cantu has not shown that the district court erred in treating the two counts of his conviction as separate groups for sentencing purposes. *See* § 3D1.2. Thus, Cantu has shown no error in the calculation of his guidelines range and the resulting sentence.

    AFFIRMED.