# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 21, 2011

Lyle W. Cayce
Clerk

No. 09-31228

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ANOTCHE WIX,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CR-76

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Anotche Wix appeals from his conviction in the United States District Court for the Eastern District of Louisiana for aiding and abetting in an attempted bank robbery,[1] aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence,[2] and conspiracy to use and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 18 U.S.C. §§ 2, 2113(a), (d).

[2] 18 U.S.C. §§ 2, 924(c)(1)(A).

carry a firearm during and in relation to a crime of violence.[3]  We conclude that the district court did not abuse its discretion in adjudging Wix competent to stand trial, that there was sufficient evidence to support Wix's conviction regarding the use and carrying of a firearm during a crime of violence, and that the district court did not commit plain error in explaining the federal rule of reciprocal discovery to Wix.  We therefore affirm his conviction.

**I**

A tan Lexus stopped near the front entrance to the First Bank & Trust in Algiers, Louisiana.  Two men simultaneously jumped out of the car.  The driver, disguised with a stocking cap, walked into the bank first.  He held out his arm in a shooting position and said, "Everybody on the floor.  This is a robbery."  Though witnesses testified that the driver held something dark-colored in his hand, there was no evidence that the driver held a weapon.  The passenger followed the driver to the door of the bank and attempted to enter, but it is unclear as to whether he actually entered the bank.  The passenger carried an AK-47-type assault rifle.  The off-duty police officer providing security for the bank fired his weapon toward the driver.  From observing the driver's reaction to the shots, the officer believed that at least one bullet had hit the driver.  Both men fled the bank on foot.

The police located and arrested the passenger, Mark Johnson, in the neighborhood of the bank and recovered the rifle from him.  After an investigation, the police identified Wix as the driver of the Lexus and obtained a warrant for his arrest.  Upon learning of the warrant, Wix turned himself in to law enforcement officials. A law enforcement comparison of DNA in the blood left at the scene by the injured driver and a DNA sample from Wix, as well as a

---

[3] 18 U.S.C. § 924(o).

comparison of palm prints recovered from the bank's door and Wix's prints, supported the identification of Wix as the driver.

Following his arrest, the district court granted Wix's application for a psychiatric examination. A federal grand jury returned a three-count superseding indictment charging Wix with (1) one count of aiding and abetting in an attempted bank robbery, (2) one count of aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence, and (3) one count of conspiracy to use and carry a firearm during and in relation to a crime of violence. The district court continued the trial while awaiting the results of the psychiatric evaluations.

The district court then held a competency hearing, during which the court considered reports evaluating Wix's competency from a forensic psychologist, who submitted a report at the government's request, and from a psychiatrist at Tulane University, who submitted a report on Wix's behalf. The court also heard testimony from Wix himself. The court determined that Wix was competent to stand trial. After a two-day jury trial, Wix was convicted on all three counts in the superseding indictment. The district court later sentenced him to 95 months of imprisonment on the first and third counts, to run concurrently, and 84 months of imprisonment on the second count, to be served consecutive to the time for the first and third counts.

Wix timely appealed his convictions, claiming three errors by the district court. First, he argues that he was not competent to stand trial. Second, challenging his conviction on the second count of the indictment, he argues that the evidence was insufficient to convict him of aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence. Third, he argues that the district court committed reversible error by incorrectly advising him about an evidentiary rule.

No. 09-31228

## II

Wix argues that he was not competent to stand trial because he suffered from delusions, the most significant of which was that he believed he was Jesus Christ.  The government argues that Wix exhibited both a rational and factual understanding of the proceedings against him.  The government asserts that because he was also able to consult with his attorney with a reasonable degree of rational certainty about the proceedings, the district court did not clearly err in finding him competent.

## A

A defendant is not competent to stand trial if he suffers from a "mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[4]  Conversely, a defendant is "competent to stand trial if he has the present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceeding against him."[5]  This court will not reverse the district court's competency determination "unless it is 'clearly arbitrary or unwarranted'—a species of clear error review."[6]  "[T]his mixed question of fact and law requires us to 're-analyze the facts and take a hard look at the trial judge's ultimate conclusion.'"[7]

We are guided by this court's analysis of a similar issue in *United States v. Doke*.  In *Doke*, the district court found the defendant competent despite his

---

[4] 18 U.S.C. § 4241(d).

[5] *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003) (brackets, citation, and quotation marks omitted).

[6] *United States v. Doke*, 171 F.3d 240, 247 (5th Cir. 1999) (quoting *United States v. Birdsell*, 775 F.2d 645, 648 (5th Cir. 1985)).

[7] *Id.* (quoting *Birdsell*, 775 F.2d at 648).

supposed memory impairment and anecdotal evidence of memory deterioration, a failed suicide attempt, minor strokes, and an extended hospitalization after carbon monoxide poisoning.[8]   The evidence also included testimony from a defense expert, who testified that the defendant had a significant memory impairment, and an expert for the government, who testified that while the defendant had some "variability in his memory functioning," most of his mental functions were reasonably intact.[9]   "After a hard look at the facts," this court held that the district court's finding of competence was not "clearly arbitrary and unwarranted."[10]

**B**

The district court's finding that Wix was competent to stand trial was not clearly arbitrary or unwarranted.  At the hearing, the district court considered evaluations of Wix's mental competency by two mental-health experts.  One report was produced at the government's request by Dr. Lisa B. Feldman, a forensic staff psychologist at the Federal Detention Center in Miami.  The second report, produced at Wix's request, was written by Dr. Sarah DeLand, a psychiatrist at Tulane University.  Both experts concluded that Wix understood the nature and consequences of the proceedings against him.

During the hearing, the district court noted other observations shared by both experts, including Wix's frequent expressions of religious thoughts and that he suffered from polysubstance abuse.  The court also noted several differences between the reports, such as the following: (1) DeLand diagnosed Wix as having a psychotic disorder, whereas Feldman did not; and (2) Feldman concluded that Wix suffered from an antisocial disorder with schizotypal and narcissistic

---

[8] *Id.* at 247-48.

[9] *Id.* at 247, 248.

[10] *Id.* at 249.

features, whereas DeLand deferred her opinion in that area of evaluation. The district court also noted that though the two experts seemed to have observed similar behaviors from Wix, and reached some of the same conclusions about him, their ultimate conclusions differed: Feldman concluded that Wix could "assist his attorney in his own defense, if motivated to do so." DeLand, on the other hand, concluded that Wix's "ability to assist his attorney in any meaningful fashion is seriously compromised."

The district court also heard testimony from Wix himself concerning his beliefs and his ability to assist his attorney. Wix stated that he understood the purpose of the competency hearing and his Fifth Amendment right not to testify during the hearing. Wix testified that he was capable of assisting his attorney at trial, despite some communication problems between them. Wix's attorney, on the other hand, stated that he did not think his client was capable of assisting him at trial.

On appeal, Wix argues that the district court clearly erred in its finding that his belief that he was Jesus Christ was a religious belief rather than a delusion, implying that a person who suffers from such a delusion is *per se* incompetent to stand trial. The evidence before the district court on this point was somewhat contradictory. DeLand reported that Wix "related to [her] that he reads the Bible as though he is Christ and then clarifies to say that he does believe he is Christ." He also "related [to DeLand] that he has known that he had a special relationship with God and, in fact, may be Christ since he got off drugs several years ago." The government's expert reported that Wix "described himself as a 'Christian,' and placed phonetic emphasis on 'Christ.'" The report went on to state that Wix "maintains strong belief in Jesus and even stated that he believes that he is Jesus, in that he sacrifices himself for people."

During examination by his own attorney at the competency hearing, Wix explained why he thought he was Christ when he spoke with Dr. DeLand. Wix

6

testified: "[E]ver since I was young, I always wanted to be Jesus, and I always read the Bible as Jesus. As I started to read the Bible like that, I started to receive the revelation that Jesus means He is us, means human beings, means existence." During cross-examination, the government's attorney asked: "You are a child of Jesus Christ" and "[Y]ou are saying that because you are deeply religious and because you feel that you read the Bible and that you meditate, that once you make an appearance, your presence, your presence by itself, will change everything." Wix answered, "Exactly," to both questions. The government attorney also asked whether, if he, the attorney "read[s] the Bible every day and if [he] truly accepted the Lord and Savior Jesus Christ as being the one and only Lord that [he] can have the same ability [to affect the atmosphere and other people] that" Wix had. Wix responded, "Exactly," to this question, as well. On redirect examination, the following exchange occurred:

> Wix's Attorney: Mr. Wix, on cross-examination by Mr. Evans, it sounded to me as if you're agreeing with him that you're simply a strong Christian who is affecting the life of others; is that right?

> Wix: Exactly.

> Attorney: Does that mean that you are not Christ but Christ-like?

> Wix: I do believe that I am Christ.

After considering the evidence regarding Wix's alleged delusion, the district court concluded that Wix's beliefs, though some might consider them extreme, were not uncommon in some evangelical systems of belief. The district court also concluded that Wix's concerns about inmate or government agents trying to get information from him was logical. In addition, the court found that Wix wanted to assist and would assist his attorney and that he also trusted and would be truthful with his attorney. The court considered the differing expert opinions about whether Wix had the ability to consult with his lawyer and assist

No. 09-31228

with his defense.  After a thoughtful, thorough, commonsense consideration of all of the evidence, the district court concluded that Wix was competent to stand trial.

Wix argues that the district court was persuaded by the prosecutor's convincing cross-examination of Wix to classify Wix's statements about being Christ as "beliefs" rather than as delusions, and that this reliance and the resulting classification were improper.  This argument is unavailing for two reasons.  First, the district court had the discretion to credit or not credit any evidence introduced during the hearing—the court was not incorrect to credit Wix's responses to the prosecutor's questions.  Second, Wix cites no authority for the proposition that some delusional thinking would make him *per se* incompetent, and the cases Wix cites are distinguishable from this one.[11]  The finding of competency was not clearly arbitrary or unwarranted.[12]

---

[11] *See United States v. Snyder*, No. 5:04-CR-17, 2006 WL 1401034, at *3-5 (W.D. Va. May 18, 2006) (finding that the defendant was incompetent based on expert testimony that he did not have a rational understanding of the proceedings and his condition had significantly deteriorated over time); *United States v. Sanchez-Hurtado*, 90 F. Supp. 2d 1049, 1050 (S.D. Cal. 1999) (reviewing evidence, including that the defendant was unable to understand the nature of the proceedings against him, that supported the court's previous finding that the defendant was incompetent); *United States v. Cooper*, No. 90-CR-489, 1992 WL 91769, at *5-6 (N.D. Ill. Apr. 21, 1992) (examining the standard for commitment of the defendant to psychiatric care and reviewing evidence that the defendant had a "limited competency to understand court and sentencing procedures").

[12] *See Doke*, 171 F.3d at 247-49; *see also United States v. McKnight*, 570 F.3d 641, 648 (5th Cir. 2009) (stating that the district court did not clearly err in relying on evidence from one expert, who found that the defendant was competent, whereas two other experts found him to be incompetent); *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003) (concluding that evidence from two psychiatrists and law enforcement officials regarding interactions with the defendant provided a "sound basis" for the district court's conclusion that he was competent).

No. 09-31228

## III

Wix next argues that the evidence does not support his conviction for aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence,[13] and thus that the district court erred when it denied his motion for acquittal on this count. There is no dispute that Wix preserved his claim for review by this court; we therefore review it de novo.[14] In reviewing a claim based on insufficiency of the evidence to support the conviction, we determine whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'"[15] viewing the evidence "in the light most favorable to the verdict."[16] The correct analysis is not as to guilt or innocence, but only whether the jury's decision was rational.[17]

## A

To convict a defendant for aiding and abetting under 18 U.S.C. § 2, "the [g]overnment must prove (1) that the defendant associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed."[18] In order to satisfy its burden of proof for aiding and abetting in the firearm charge, the prosecution must prove that "the defendant acted with the knowledge or specific intent of advancing the use of the firearm."[19] "[T]here must also be proof that the defendant performed some affirmative act relating

---

[13] *See* 18 U.S.C. §§ 2, 924(c).

[14] *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006).

[15] *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[16] *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997).

[17] *Lopez-Urbina*, 434 F.3d at 757.

[18] *Id.* (internal quotation marks and citation omitted).

[19] *Id.* at 758 (internal quotation marks, brackets, and citation omitted).

to the firearm"—that is, "there must be evidence that the defendant took some action to facilitate or encourage the use or carrying of a firearm," not merely that the defendant facilitated or encouraged the underlying offense.[20]   We must therefore determine whether there is evidence in the record to support the jury's determination that Wix took some affirmative action to facilitate or encourage Johnson's use of the AK-47-type assault rifle during the attempted bank robbery.

## B

The district court was correct in denying Wix's motion for a judgment of acquittal. A reasonable juror could infer that Wix acted with the knowledge and specific intent of advancing the use of the firearm by taking action to facilitate and encourage its use. Wix drove himself and Johnson, who carried the AK-47-type assault rifle, to the bank. Johnson was holding the firearm when he and Wix exited the vehicle simultaneously—Johnson did not have to retrieve the rifle from a separate compartment of the car after they exited. Witnesses testified that though part of the rifle was covered in some sort of wrapping, parts of it were clearly visible, and it was immediately identifiable as the men exited the car. Testimony at trial revealed that after Wix and Johnson exited the car at the same time, Wix reached the door to the bank only slightly ahead of Johnson. When Wix entered the building, he held out his arm as if he were holding a weapon, and exclaimed, "Everybody on the floor. This is a robbery." His hand was covered with some sort of dark cloth. The robbery attempt was thwarted when the bank's security officer fired his gun in Wix's direction.

From this evidence, a rational juror could have found that Wix facilitated the use of the rifle by knowingly transporting it to the bank for use in the robbery. The jury could also have reasonably inferred that Wix's entrance and announcement were intended to facilitate Johnson's entrance into the bank with

---

[20] *Id.* (internal citations and quotation marks omitted).

the rifle, which both men intended would be used in the robbery.  We conclude that a rational juror could have found that the government had proved all elements of the offense beyond a reasonable doubt.  The district court did not err in denying Wix's motion for judgment of acquittal.

## IV

Finally, Wix argues that the district court erroneously stated the breadth of the federal reciprocal discovery rules and the consequences of arranging for an independent comparison of the DNA found at the crime scene with his own DNA.  The government responds that there was no error and that Wix's claim fails under the plain error standard of review.

Because Wix failed to object to the error before the district court, we review the proceedings for plain error.[21]  Under this standard, reversal is appropriate only if "(1) there was error, (2) the error was clear and obvious, and (3) the error affected [the defendant's] substantial rights."[22]  We exercise our discretion to reverse only if all three factors are met and if the "error seriously affects the fairness, integrity or public reputation of the judicial proceedings."[23]

Wix's claim arises from an exchange during a pretrial hearing on a motion for continuance.  The district court had granted defense counsel's motion for the appointment of an expert to examine the DNA evidence found at the scene of the attempted bank robbery.  Wix opposed continuing the trial, a position which would have precluded the preparation of the defense expert's report for trial.  The government filed a motion for continuance so that the defense expert could finish the DNA analysis before trial.  During the hearing, the court advised Wix

---

[21] *United States v. Garcia*, 470 F.3d 1143, 1146 (5th Cir. 2006).

[22] *United States v. Davis*, 487 F.3d 282, 284 (5th Cir. 2007) (alteration in original) (internal citations and quotation marks omitted).

[23] *United States v. Olano*, 507 U.S. 725, 736 (1993) (internal brackets, quotation marks, and citation omitted).

No. 09-31228

that he had a right to have his expert either look at the government's DNA analysis protocols and prepare a report evaluating their validity, or perform a second comparison between the DNA evidence found at the scene and Wix's DNA, or both. Wix expressed concerns that the analysis performed by his expert would be given to the government.

The district court undertook to explain the federal criminal proceeding reciprocal discovery rule to Wix; though the court did not name it specifically, it is clear that the court was referring to Federal Rule of Criminal Procedure 16(b). Rule 16(b) requires the defendant to disclose, at the government's request, documents, objects, and reports of examinations and tests if the defendant made a similar disclosure request of the government, the item is within the defendant's custody or control, and the defendant intends to use the item in the defendant's case-in-chief at trial.[24] In addition, the defendant must disclose a report of an examination or test in his possession, custody, or control, if the defendant intends to call the expert witness who prepared the report and the report relates to the witness's testimony.[25] Wix contends that the district court erroneously advised him that the reciprocal discovery requirements were broader than those required by the rule.

The court explained the following to Wix:

> If you elect to give your DNA sample to your expert and your expert comes to the same or similar conclusion as the government's DNA expert then, yes, that could be used against you. . . . Just like you're entitled to get from their expert their conclusions on DNA, they're entitled to get from your expert's conclusion on DNA testing.
>
> . . .
>
> You have a possibility, which is your right, you have a possibility that you would just use a DNA expert to see whether or not the government's procedures were proper and correct without taking a

---

[24] FED. R. CRIM. P. 16(b).

[25] *Id.* 16(b)(1)(B)(ii).

sample from you.  But even then if they decided that, your expert decides that, yes, the government's procedures and analysis complies with the standards for testing DNA, then that is evidence that again the government would be entitled to receive and could be used against you at trial.  Same side of the coin, if the DNA expert hired from your side says that, no, the government's evidence is faulty, it was improperly obtained or analyzed under the standards, then that's beneficial to you and that comes out at trial, they're entitled to that as well.

Assuming, *arguendo*, that the explanations by the district court of the reciprocal discovery rule constituted clear and obvious error, any such error did not affect Wix's substantial rights: at the end of the hearing, Wix agreed to continue the trial so that the appointed defense expert could analyze the government's DNA analysis protocols, and then, if necessary, perform an independent comparison of the crime scene DNA to Wix's DNA.  The court's explanation, if erroneous, did not discourage Wix from seeking the expert's analysis.  Wix claims on appeal that an independent DNA analysis was never performed.  The record suggests otherwise.  But even if this assertion is correct, it does not change the fact that, at the end of the hearing in which the statements about discovery were made, the district court granted the defense's motion to appoint an expert and Wix agreed to the trial continuance so that the analysis could be performed.  Wix did, in fact, consult a DNA expert.

We conclude, therefore, that the district court did not commit plain error in its explanation of the reciprocal discovery rule; Wix is not entitled to a new trial on this ground.

\*     \*     \*

For the foregoing reasons, we AFFIRM the district court's judgment.