**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-51350

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ISHTIAQ AHMED,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

March 10, 2003

Before DeMOSS, STEWART, Circuit Judges, and FALLON,[1] District Judge.

DeMOSS, Circuit Judge:

Appellant Ishtiaq Ahmed pled guilty to a one count indictment alleging a violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(ii) for harboring an illegal alien. At sentencing, the district court overruled Ahmed's objection to a two level increase for obstructing the investigation and sentenced Ahmed to six months imprisonment,

---

[1]District Judge for the Eastern District of Louisiana, sitting by designation.

1

three years supervised release, a $100.00 mandatory special assessment fee, and a $1,000.00 fine. Ahmed now appeals his sentence.

## BACKGROUND

On or about July 14, 2002, four Pakistani nationals jumped ship from the "Little Lady P," a vessel which was docked in St. Charles Parish, Louisiana. One of the four sailors was Ahmed's nephew. None of the Pakistani sailors had legal status to be in the United States when not on the ship docked in an American port. The sailors arranged for a local taxi cab driver, Burwell Harris, to drive them to Texas. En route to Texas, Harris placed a phone call for the sailors to a Waco, Texas, number but did not get an answer. The sailors then continued their journey with Harris but apparently Harris abandoned the sailors in Lafayette, Louisiana, after receiving $400 from them for the trip.

The sailors then arranged to have another taxi cab driver, Douglas Adams, drive them from Lafayette to Waco for $600. En route to Waco, Adams also placed a phone call to Waco for the sailors and received instructions as to where to deliver them. Adams dropped the sailors off at a Jack-in-the-Box on I-35 in Bellmead, Texas, where they were met by a man the sailors referred to as "Uncle," according to Adams.

Apparently, Ahmed was the contact in Waco who arranged to pick up the sailors once they arrived. Once Ahmed picked the sailors up

2

from the Jack-in-the-Box, he took them to the Sandman Motel in Waco where he got them two rooms in his name, so that they would have a place to stay. The next day, July 15th, Ahmed picked up the sailors and took them to get something to eat and to Wal-Mart to get some new clothes. Ahmed then returned the individuals to the motel and went to work.

Meanwhile, an FBI investigation into the missing sailors whereabouts led to interviews with both cab drivers Harris and Adams. The FBI investigation revealed that the Waco telephone number that had been called was for a Sam's Convenience Store, which was owned by Saleem "Sam" Moosa and the Appellant, Ahmed. The FBI went to the store on July 15th and questioned Ahmed about the sailors, showing him pictures of the individuals. Ahmed apparently denied any knowledge of the Pakistani sailors and then left the store to return to his home. The FBI agents obtained Ahmed's home address and went to his house to attempt to continue questioning. At Ahmed's house, the FBI once again attempted to interview Ahmed but he continued to insist that he had no knowledge of the missing sailors.[2] According to the pre-sentencing report ("PSR"), the FBI then took Ahmed into custody apparently for further questioning.

Subsequent to their attempted interviews with Ahmed, the FBI

_____

[2]It is unclear from the record what the actual questions and responses were, but it is clear that Ahmed generally denied any knowledge of the sailors.

learned, from sources other than Ahmed, that Ahmed had either a friend or relative who owned the Sandman Motel. Based on this information, the FBI went to the motel on July 15th (the same day as their attempted interviews with Ahmed) and showed an employee pictures of the missing sailors.[3] The employee informed the FBI that similar-looking individuals were staying in rooms 8 and 9. Records from the motel showed that the individual who rented the rooms was Ahmed. The FBI found all four sailors in room 9 and took them into custody.

Ahmed pled guilty to a one count indictment alleging a violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(ii) for harboring an illegal alien. Following objections by both the government and Ahmed, the Probation Office produced a revised PSR, which assigned a total offense level of 12 for the offense of harboring an alien. This total offense level included a two level reduction for acceptance of responsibility but also a two level increase for obstruction of justice. The revised PSR also removed a three level reduction, subsequent to an objection by the government, that was previously granted based on U.S.S.G.

---

[3]The date of the Ahmed interviews and the motel raid are listed in the briefs as July 15th but at the sentencing hearing, it was asserted that the day of these events was July 16th. However, neither party disputes that these events occurred on the same day and in the order listed above, despite this slight discrepancy of dates.

§2L1.1(b)(1).[4]

At sentencing, the government withdrew its earlier objection to the three level decrease in base level under § 2L1.1(b)(1). As the government no longer objected, the district court reduced Ahmed's total offense level to 9. Ahmed then reiterated an objection he had to the PSR's recommendation that his base level be increased by two levels for obstruction of justice. The PSR based this recommendation on Ahmed's statements to the FBI that he did not know the sailors. The PSR concluded that these statements were materially false statements that significantly impeded the investigation because the agents had to spend more time looking for the sailors.

At the sentencing hearing, Ahmed's counsel argued that these two statements were not significant impediments as the FBI caught the sailors only a few hours later, and that the FBI already had the lead about the Sandman Motel by the time of the second interview. The government offered no evidence in response as to why Ahmed's denials of knowing the sailors was a significant impediment. Instead, the government simply argued that they had thousands of leads as to where the sailors might be and had Ahmed told the FBI where the sailors were, it would have saved them time. The district court agreed with the government's argument, stating:

---

[4]This section allows for a three level decrease if the harbored alien is the defendant's spouse or child or both. The definition of a "child" can be found in 8 U.S.C. § 1101(b)(1) and the term encompasses a variety of possibilities.

> The Court would determine that there was a significant impediment to the investigation placed in the way of law enforcement by the defendant and the argument to the contrary seems to be that he should be credited for what turned out to be [an] excellent investigation by the Federal Bureau of Investigation. I don't think that would be appropriate. I'll overrule that objection.

Apparently, the district court reached this conclusion based solely on the brief arguments presented before it at sentencing. After overruling the objection, the district court sentenced Ahmed based on a total offense level of 9, with a guideline range of four to ten months. On November 25, 2002, the district court sentenced Ahmed to six months incarceration, three years supervised release, a $100.00 mandatory special assessment fee, and a $1,000.00 fine. On December 11, 2002, the district court denied a motion by Ahmed to stay his sentence of imprisonment pending his appeal.[5] Ahmed now appeals his sentence and the district court's application of the obstruction of justice enhancement.

## DISCUSSION

<u>Did the district court clearly err by imposing a two level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1?</u>

Ahmed asserts that the district court erred in applying the sentence enhancement for obstruction of justice under U.S.S.G. § 3C1.1. We review a district court's application of the Sentencing

---

[5]Based on this information, Ahmed has presumably served approximately three months of his six month sentence. However, a reduction in offense level could also affect the amount of Ahmed's fine. *See* § 5E1.2.

6

Guidelines to the facts for clear error. *United States v. Smith*, 203 F.3d 884, 891 (5th Cir. 2000). Section 3C1.1 of the Sentencing Guidelines provides that "[i]f...the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction,...increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The district court applied §3C1.1 based on Application Note 4(g) which states that "providing a materially false information to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense" is a basis for the increase. § 3C1.1, cmt. n.4(g). Ahmed claims that his mere denials of knowing the sailors did not amount to a significant impediment.

At the outset of our analysis, the Court notes that Ahmed's denials of knowing the sailors could possibly qualify under Application Note 2 of § 3C1.1 which states that "[a] defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) . . . is not a basis for application of this provision." In *United States v. Surasky*, this Court found that a defendant's false statements that he had nothing to do with a prison escape attempt, when viewed in the light most favorable to him, were nothing more than denials of guilt. 976 F.2d 242, 244-45 (5th Cir. 1992). However, in *United States v. Smith*, this Court

7

refused to extend the exception to a defendant when her statements "went far beyond merely denying her own involvement or refusing to provide information, which would not qualify for the obstruction enhancement."  203 F.3d 884, 891 (5th Cir. 2000); *but see **United States v. Barnett***, 939 F.2d 405, 407 (7th Cir. 1991) (finding that a defendant's false statements, not made under oath, that she had invested money rather than fraudulently kept it for herself was nothing more than a denial of guilt).  Had the FBI actually asked Ahmed where the missing sailors were, the statement would have fallen squarely in this category, but Ahmed foreclosed them from asking such a question by denying even knowing the sailors.  Ahmed argues in his brief that his statements really amounted to nothing more than remaining silent in that the information relayed had the same effect.  Whether Ahmed's statements were mere denials of guilt or whether they went beyond merely denying his own involvement is difficult to determine.  However, as we find that Ahmed's statements did not significantly impede the investigation we need not delve any deeper into this issue.

Under Application Note 5(b), the sentence enhancement under §3C1.1 shall not apply for "making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies."  Therefore, not all false statements to law enforcement officers automatically incur the sentence enhancement. ***United States v. Phillips***, 210 F.3d 345, 349 (5th Cir. 2000) ("The

8

application notes to § 3C1.1 make clear that not all false statements to law enforcement justify the enhancement."). In the present case, only material statements that *significantly* impede the investigation shall qualify. § 3C1.1, cmt. n.4(g).

Application Note 6 defines a material statement as a statement that, "if believed, would tend to influence or affect the issue under determination." § 3C1.1, cmt. n.6. As this Court noted in **Surasky**, it is hard to imagine a scenario where an immaterial statement could obstruct justice and conversely, "any statement that significantly obstructs or impeded an investigation is likely to always, or almost always, be material." 976 F.2d at 246, n.5. This does not mean, however, that all material statements significantly impede an investigation. In the present case, Ahmed's statements, if believed, could have influenced the investigation in that the officers would have left Ahmed alone and quit looking into his contacts. We, therefore, conclude that Ahmed's statements meet the low threshold of materiality.

However, we do not agree with the district court that Ahmed's statements significantly impeded the investigation. In the past, this Circuit has found that statements which lead officers on a misdirected investigation do qualify as significant impediments. **United States v. Phipps**, 2003 WL 123841, *11 (5th Cir. 2003) (finding that defendants' statements which misidentified an accomplice significantly impeded the investigation so as to warrant

9

the enhancement); *Smith*, 203 F.3d at 891 (finding the enhancement appropriate because the defendant's "statement went far beyond merely denying her own involvement or refusing to provide information, which would not qualify for the obstruction enhancement; she specifically sent the FBI investigators on the trail of unknown suspects, whom she specifically described in order to obstruct the investigation into her own and her co-conspirators' involvement"); *United States v. Rickett*, 89 F.3d 224, 226-27 (5th Cir.1996) (finding that an obstruction enhancement was appropriate when a defendant gave officers a false identification at the time of his arrest which led them to arrest an innocent third party and forced them to file a superseding indictment against the defendant). Conversely, courts have held that statements which do not cause investigators to expend any additional resources on their investigation are not the type of statements which *significantly* impede the investigation. *Surasky*, 976 F.2d at 247 (finding that even if the Court were to hold that the defendant's statements were more than mere denials of guilt, they still did not significantly impede the investigation into a prison escape attempt because a co-conspirator had already confessed to the defendant's involvement and other evidence also already pointed to the defendant's involvement); *United States v. Griffin*, 310 F.3d 1017, 1022-23 (7th Cir. 2002) (holding that because there was no evidence that the defendant's statement impeded the official investigation, the

10

statement alone could not support the obstruction enhancement); **Barnett**, 939 F.2d at 407 (finding that because a defendant's false statements did not cause investigators to expend additional resources, the obstruction of justice enhancement should not be imposed under Note 3(g) and also was excluded by the "denial of guilt" exception); *see also* **Phillips**, 210 F.3d at 349 (finding that a defendant's false statement to officers that he did not know who owned a station wagon or the drugs it contained did not qualify for an obstruction of justice enhancement because the statement did not lead the officers on a misdirected investigation or impede the investigation). Also, as the Seventh Circuit has recently noted, the language of Application Note 4(g) "requires a causal relationship between the materially false statement given and a resulting impediment upon the investigation or prosecution." **Griffin**, 310 F.3d at 1023. In the present case, there is absolutely no evidence that Ahmed's statements caused the FBI agents to go on a "wild goose chase," or in any other way misled the agents in the sort of manner that has traditionally been the basis for enhancement. Rather, the FBI had to go forward with their investigation as they normally would, i.e. continue searching for and tracking down possible leads as to the sailors whereabouts.

The government argues only that the district court was correct, but at the sentencing hearing, the government justified the enhancement because "[h]ad Mr. Ahmed cooperated in the

11

beginning, [the FBI] would not have had to track down all the rest of the leads that they did have to go to." This justification is flawed for two reasons. First, the FBI agents never asked Ahmed where the sailors were, only if he knew them. Though it is true that the question they asked was probably preliminary to them asking where the sailors were, it is hard to conceive how Ahmed's statement that he didn't know the sailors could have created an additional impediment to the investigation. Even if the FBI agents had asked Ahmed if he knew where the sailors were located, as we have already stated, a negative response to this question would have qualified as a denial of guilt. The second flaw in the government's argument is that it seeks to punish Ahmed not for impeding the investigation, but for not aiding in the investigation. Under U.S.S.G. § 5K1.1, a defendant may receive a downward departure in his sentencing for providing substantial assistance to authorities, but this provision does not axiomatically require a sentence enhancement for failing to assist the authorities. Indeed, under § 5K1.2 "[a] defendant's refusal to assist authorities in the investigation of other persons *may not* be considered as an aggravating sentencing factor." U.S.S.G. § 5K1.2 (emphasis added). We therefore hold that the district court erred in applying the sentence enhancement under § 3C1.1.[6]

_____

[6]We additionally note that Ahmed received a downward departure for his acceptance of responsibility under §3E1.1, which the government has never objected to. Application Note 4 of § 3E1.1 states, "Conduct resulting in an enhancement under § 3C1.1

12

"[W]hen an appellate court finds that the Guidelines have been incorrectly applied, 'a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.'" **Surasky**, 976 F.2d at 247 (quoting **Williams v. United States**, 503 U.S. 193, 203 (1992)). "Such error is harmless only if it did not affect the selection of the sentence imposed." **United States v. Reyes-Maya**, 305 F.3d 362, 368 (5th Cir. 2002). Ahmed's range of imprisonment under Offense level 9 was 4-10 months. Under level 7, his range of imprisonment would be 0-6 months. While it is true that the sentence Ahmed received, 6 months, falls within both levels' ranges, it falls at the low end of level 9 but is the maximum recommended sentence under level 7. Also, the district court stated that in sentencing Ahmed, it would consider the fact that this was aberrant behavior for Ahmed when selecting a sentence within the guideline range. We, therefore, hold that the district court's error in applying the sentence enhancement under § 3C1.1 was not harmless.

## CONCLUSION

Having carefully reviewed the record of this case and the

---

(Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n. 4. The government has never attempted to demonstrate why this is an extraordinary case, and, it is this Court's belief that it is not.

parties' respective briefing and for the reasons set forth above, we conclude that the district court clearly erred by enhancing Ahmed's offense level for obstruction of justice. We accordingly VACATE Ahmed's sentence and REMAND for re-sentencing.

**VACATED AND REMANDED.**