United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 04-60973

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT D. BURKE,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Northern District of Mississippi

———————————————

Before GARWOOD, SMITH, and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Robert D. Burke was convicted pursuant to a guilty plea of attempt to commit extortion under color of official right contrary to 18 U.S.C. §§ 1951-52. Burke challenges his 96-month sentence. We affirm.

## FACTS AND PROCEEDINGS BELOW

Robert Burke, an Alderman for Holly Springs, Mississippi, was indicted for one count of conspiracy to aid in the distribution of more than five kilograms of cocaine, and five counts of attempt to

commit extortion under the color of official right. Burke pleaded guilty to a single count of extortion (count two) under a plea agreement providing that the court would not sentence Burke to more than ten years' imprisonment and that the remaining counts would be dismissed.

At Burke's plea colloquy, the prosecutor read nine paragraphs into the record to establish a factual basis for the plea. These nine paragraphs described a reverse-sting operation in which, on five separate occasions, Burke and his co-conspirators were paid money to provide a police escort for what they believed were shipments of 50 to 100 kilograms of cocaine. In fact, only a single 1 kilogram bag in each shipment contained real cocaine. The rest of the purported cocaine in these five shipments was fake.

This account was far more information than necessary to support Burke's guilty plea to extortion. However, after the prosecutor read these facts into the record, the court asked Burke, "[i]s there anything he said that you would disagree with?" Burke responded "No, sir, Your Honor."

The pre-sentence report (PSR) assessed a base level of 10 pursuant to U.S.S.G. §§ 1x1.2, 2C1.1(a)(2003). Two levels were added pursuant to U.S.S.G. § 1C1.1(b)(1) because the offense involved more than one bribe or extortion. The PSR then added 8 levels pursuant to U.S.S.G. § 2C1.1(2)(B) because the offense involved a public official. These adjustments produced an offense

level of 20.

But, U.S.S.G. § 2C1.1, the sentencing guideline for extortion under color of official right, cross-references different sections of the guidelines that should instead apply if the resulting offense level would be higher than the level determined under section 2C1.1 itself. One of these cross-references advises: "If the offense was committed for the purpose of facilitating the commission of another criminal offense, apply the offense guideline applicable to a conspiracy to commit that other offense . . . ." U.S.S.G. § 2C1.1(c)(1).

Burke had already admitted, during his plea colloquy, that the extortion was committed for the purpose of facilitating the commission of another criminal offense: aiding in the distribution of cocaine. So, as the PSR recommended, the sentencing court applied the section 2C1.1(c)(1) cross reference and, instead of the 20 levels calculated under section 2C1.1, the court assessed 38 levels for conspiracy to aid in the distribution of 500 kg of cocaine.[1] After a few more adjustments, including a section 3B1.3 two-level increase for abuse of public trust, Burke was sentenced based on an offense level of 35 and a criminal history category of

_____

[1]Burke, by his agreement to the prosecutor's statement of the evidence at the Rule 11 hearing, admitted that he had agreed to escort what he believed to be 350 kg of cocaine. The PSR used the figure 500 kg, to which Burke objected to below. But, as Burke admitted in his objection, the difference is immaterial because the sentencing guidelines do not address cocaine-quantity ranges above 150 kg.

3

I.  This resulted in a guidelines imprisonment range of 168-210 months.   However, after calculating Burke's sentence under the guidelines, the court accepted, under Rule 11(c)(1)(C), the plea-agreement sentencing cap of ten years, granted the government's section 5K1.1 motion for downward departure, and sentenced Burke to 96 months with 2 years supervised release.   Burke raises four issues on appeal.  We discuss each in turn.

**DISCUSSION**

I.  Sentencing Based on Fake Cocaine

Burke argues that the sentencing court erred in considering fake cocaine in its drug quantity calculation.  As a result, he contends that his sentence should be based on conspiracy to aid in the distribution of 1 kilogram of real cocaine, not 150 or more kilograms of mostly fake cocaine.

A.  Standard of Review

The question presented here is, with respect to the crime of conspiracy to aid in the distribution of drugs, whether the sentencing court should include fake drugs in its drug quantity calculation.  This is a legal question as to the interpretation and application of the sentencing guidelines which we review *de novo*.  *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

B.  Conspiracy and Fake Drugs

A defendant may not be convicted of the possession or sale

4

of drugs unless the defendant possesses or sells *actual* drugs.
*See United States v. Bobo*, 586 F.2d 355, 371 (5th Cir. 1978),
cert. denied, 99 S.Ct. 1546 (1979). However, factual
impossibility does not preclude a conviction for conspiracy or
attempt. *See United States v. Pietri*, 683 F.2d 877, 879 (5th
Cir. 1982). Because the act of conspiracy is complete upon the
formation of an illegal agreement, a defendant can be convicted
of conspiracy to aid in the distribution of drugs even if those
drugs are fake. *Id.* ("The fact that the cocaine which they
thought they were receiving was a fake substance does not affect
their intent to obtain the genuine article."). *See also United
States v. Murray*, 527 F.2d 401, 411-12 (5th Cir. 1976) (upholding
a conviction for conspiracy to distribute heroin even though it
turned out to be lactose).

The question raised in Burke's objection is whether it
follows that because a defendant can be convicted of conspiracy
to distribute fake drugs, then a defendant's sentence for a drug
conspiracy may be based on a quantity of fake drugs. We hold
that a sentence for drug conspiracy may be based on fake drugs.
We are guided in this respect by the commentary to U.S.S.G. §
2D1.1. That commentary explains that where the drug offense
involves an agreement to buy or sell, "the agreed-upon quantity
of the controlled substance shall be used to determine the

5

offense level."[2]   U.S.S.G. § 2D1.1, Commentary, Application Note
12.   Thus, for inchoate offenses, the quantity of drugs is based,
not on the amount actually delivered, but on the amount agreed
upon. *United States v. Lombardi*, 138 F.3d 559, 562 (5th Cir.
1998).  *See also United States v. Dallas*, 229 F.3d 105, 108–10
(2d Cir. 2000).   Indeed, in convictions based on reverse-sting
operations such as this one, where the actual quantity of drugs
is controlled by the government instead of by the defendant, the
quantity of drugs agreed upon more accurately reflects the scale
of the offense than the quantity actually delivered.  U.S.S.G. §
2D1.1 Commentary, Application Note 12.

Accordingly, Burke's sentence for drug conspiracy is
properly based upon the amount he agreed to escort.  His crime
was complete when he agreed to aid in the distribution of 350
kilograms of cocaine with the intent to achieve that objective.

II.  Quantities That Were Part of the Dismissed Counts

Even if fake cocaine is properly included in the drug
quantity calculation, Burke argues that the sentencing court
erred in considering the entire 350 kilograms of cocaine, real
and fake, admitted to during the plea colloquy.  Instead, Burke
argues, the  district court should have considered only the 50
kilograms involved in count two, the count to which Burke pleaded
guilty.

---

[2]There are exceptions that do not apply here.

6

A.   Standard of Review

The question of whether the sentencing court is limited to the quantity of drugs that provided the factual basis for conviction is a legal question concerning the interpretation and application of the sentencing guidelines that we review *de novo*. *Villegas*, 404 F.3d at 359. Because Burke objected to the PSR's consideration of the entire 350 kilograms of cocaine, our *de novo* review of the record is for harmless error. *United States v. Ahmed*, 324 F.3d 368, 374 (5th Cir. 2003).[3]

B.   Harmless Error

Rule 52(a) of the Federal Rules of Criminal Procedure provides that "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed.R.Crim.P. 52(a). Thus, an error in the application of the sentencing guidelines can be disregarded as harmless if it "did not affect the district court's selection of the sentence imposed." *Ahmed*, 324 F.3d at 374. It is the proponent of the sentence, here the government, that bears the burden to "persuade[] the court of appeals that the district court would have imposed the *same sentence* absent

---

[3]There is no preserved *constitutional* error. Burke did not object to his sentence on Sixth Amendment grounds, although, as we address later, he now argues *Booker* on appeal. Moreover, in his brief on appeal, Burke does not challenge either his conviction or sentence on Fifth Amendment grounds; he argues only that the guidelines were misapplied.

the erroneous factor." *United States v. Tello*, 9 F.3d 1119, 1129 (5th Cir. 1993)(quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).[4]

We conclude that the government has met that burden. At the Rule 11 hearing, Burke did not dispute that "[o]n July 6, 2001, as described in count two, Mr. Burke and others provided protection by providing an escort for a shipment of what was purported to be 50 kilograms of cocaine." Thus, Burke has conceded that at least 50 kilograms of cocaine are relevant to his guilty plea.

A reduction in the quantity of cocaine from 350 kg to 50 kg would not have affected Burke's sentence, because either quantity yields a sentence much longer than the ten-year cap. That is, 350 kilograms of cocaine results in an offense level of 35, yielding a range of 168–210 months; 50 kilograms results in an offense level of 33, yielding a range of 135–168 months. *See* U.S.S.G. § 2D1.1(c). The bottom of either range substantially exceeds both the 120 month agreed sentence cap and Burke's ultimate sentence of 96 months.

This is not simply a case where the same sentence is

---

[4]We understand this to be the proper standard for review of non-constitutional sentencing errors. However, we recognize that in what may be a similar circumstance a prior panel of this court did apply, without citation, the "beyond a reasonable doubt" standard. *United States v. Lopez-Urbina*, __ F.3d __ (5th Cir. 2005) (2005 WL 1940118 at *11).

8

included in both the incorrect and the correct sentencing ranges. *See e.g.*, *United States v. Lopez-Urbina,* __F.3d__ (5th Cir. 2005). In such cases, it is more difficult for the government to bear its burden of proving that "the district court would have imposed the same sentence absent the erroneous factor." *United States v. Tello*, 9 F.3d 1119, 1131 (5th Cir. 1993). Instead, in this case any alleged errors are moot because the defendant's sentence was determined entirely by only two independent factors: (1) The ten-year sentencing cap and (2) the downward departure for substantial assistance to authorities under section 5K1.1.

Neither of these two factors is influenced by the quantity of drugs (50 or 350 kg). The ten-year cap, if accepted by the court, functions without regard to drug quantity or to the severity of the sentence previously calculated. Furthermore, with respect to section 5K1.1, neither the considerations listed, nor the policy statement provided, suggest that the severity of the crime——here determined by the quantity of drugs——should influence the amount of the substantial-assistance reduction.[5]

C. Quantities of Cocaine

---

[5]The substantial assistance to authorities departure guideline provides a non-exhaustive list of factors that a sentencing court should consider when applying 5K1.1. These factors are: (1) the court's evaluation of the significance and usefulness of the defendant's assistance; (2) the truthfulness of information provided by the defendant; (2) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger faced by the defendant; (5) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1.

In any event, even if the consideration for sentencing purposes of more cocaine than the 50 kilograms involved in count two cannot be considered harmless, Burke would still lose. The sentencing guidelines provide that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1 comment n.12; U.S.S.G. § 1B1.3(a)(2) (relevant conduct). An applicable comment to the guidelines gives the following example:

> "For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales."

U.S.S.G. § 1B1.3 Commentary, Application Note 3. Following that example, this court held that although a defendant pleaded guilty to charge specifying only 20 lbs of marihuana, the drug quantity at sentencing should include the actual amount involved in the entire conspiracy. *United States v. Warters*, 885 F.2d 1266, 1273 (5th Cir. 1989) ("[T]he district court is not limited by the quantity of drugs mentioned in the charging instrument.").

Accordingly, the district court did not err by considering the entire 350 kilograms of cocaine that Burke admitted to as part of his drug conspiracy, even though 300 of those kilograms were related to dismissed counts.

III. Abuse of Position of Trust

Burke argues that the sentencing court erred in applying a two-level sentence enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3.

A.  Standard of Review

The district court's application of section 3B1.3 is a sophisticated factual determination that we review for clear error.  *United States v. Partida*, 385 F.3d 546, 562 (5th Cir. 2004).

B.  Abuse of a Position of Trust

Section 3B1.3 provides for a two-level enhancement "if the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G.  § 3B1.3.  Burke concedes that, as an Alderman, he occupied a position of public trust. However, he objects to the finding that he abused his position in a manner that significantly facilitated the commission of his offense.

The district court ruled that Burke did abuse his position of trust both because city aldermen appoint the chief of police, and because Burke used his position to assist the police escort of drugs through his city. Burke's usefulness to the purported drug smugglers and his financial reward for escorting the drugs through his city, depended upon his position as alderman.  The district court did not clearly err in assessing him a two-level increase for abuse of public trust.

IV. *Booker* Error

With respect to each of his above contentions, Burke also argues in this court that the district court committed *Booker* error by sentencing him in light of facts not directly relevant to his guilty plea and not found by a jury.

There is no support in the guidelines or in our case law for the argument that the court should consider only facts directly relevant to the elements of the offense charged. In fact, as discussed above, the guidelines explicitly advise the sentencing court to examine all relevant conduct, including facts external to the count of conviction.

Of course, if the court itself found those external facts,[6] and they had not been admitted by Burke, he could have argued *Booker* on appeal. However, because Burke admitted all the relevant facts at his plea colloquy, he cannot rely on *Booker* here. The holding of *Booker* is "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be *admitted by the defendant* or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 125 S.Ct. 738, 756 (2005) (emphasis added). Burke's *Booker* argument is without merit.

---

[6]Or, failed to find those facts beyond a reasonable doubt.

12

**CONCLUSION**

For the foregoing reasons, the sentence of the district court is

AFFIRMED.