# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 28, 2007

Charles R. Fulbruge III
Clerk

No. 06-10387

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIO TRUJILLO,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, WIENER, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Mario Trujillo pleaded guilty to violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) by possessing with intent to distribute more than 50 grams of a mixture or substance containing methamphetamine. Trujillo appeals the district court's application of a sentencing enhancement for obstruction of justice and contends his sentence is unreasonable. We affirm the sentence.

I

Pursuant to a written plea agreement, Mario Trujillo pleaded guilty to an indictment charging him with one count of possession with intent to distribute more than 50 grams of a mixture or substance containing methamphetamine. In the presentence report (PSR), Trujillo's base offense level was determined to

be 28 pursuant to § 2D1.1(c)(6) of the advisory sentencing Guidelines (U.S.S.G.).[1] The PSR recommended a two-level decrease to Trujillo's offense level because Trujillo met the criteria set forth in U.S.S.G. § 5C1.2(a). The PSR recommended a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because Trujillo told the probation officer during a presentence interview that he was born in Forth Worth, Texas. After reviewing Trujillo's juvenile record, the probation officer learned that Trujillo was actually born in Mexico and was subject to deportation because of the instant federal drug trafficking offense.[2] The PSR further concluded that although Trujillo's actions of admitting guilt, expressing remorse, and implicating another individual in the crime normally would "clearly demonstrate acceptance of responsibility," the PSR did not recommend a reduction for acceptance of responsibility because Trujillo had misrepresented his citizenship to the probation officer. Trujillo's total offense level of 28 combined with his criminal history category of I resulted in an advisory Guidelines range of 78 to 97 months of imprisonment.

Trujillo objected to the increase in his offense level for obstruction of justice and the denial of a reduction for acceptance of responsibility. Trujillo contended that he did not willfully obstruct justice because he believed that he was born in Fort Worth. Trujillo also objected to the obstruction of justice increase on the ground that his statement to the probation officer was not a material statement. The district court overruled Trujillo's objections after considering testimony from Trujillo's stepfather.

The district court then adopted the findings set forth in the PSR and sentenced Trujillo to 84 months of imprisonment. The district court also

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(6) (2005).

[2] See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(I), 1101(a)(43)(B) (defining the term "aggravated felony" to mean "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)").

imposed a four-year term of supervised release with the condition that, upon completion of his prison term, Trujillo would be surrendered to immigration officials for deportation pursuant to 18 U.S.C. § 3583(d). Trujillo appeals his sentence.

## II

We review the district court's interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error.[3] A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.[4] "'Giving due regard to the opportunity of the district court to judge the credibility of the witnesses,' we will deem the district court's factual findings clearly erroneous only if, based 'on the entire evidence,' we are 'left with the definite and firm conviction that a mistake has been committed.'"[5]

Trujillo first contends that the district court's factual finding that Trujillo intentionally misrepresented his citizenship to the probation officer during the presentence investigation was clearly erroneous. The district court based its application of the obstruction of justice enhancement[6] and its denial of a

---

[3] United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999).

[4] Id.

[5] United States v. Cabrera, 288 F.3d 163, 168 (5th Cir. 2002) (quoting 18 U.S.C. § 3742(e) and United States v. Cooper, 274 F.3d 230, 238 (5th Cir. 2001)) (citation omitted).

[6] U.S.S.G. § 3C1.1 (2005) provides:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

reduction for acceptance of responsibility[7] on this factual finding. Trujillo asserts that he did not willfully give a false statement to the probation officer because, at the time the statement was made, he believed that he was born in Fort Worth.

"The government must prove factors for enhancement of sentencing by a preponderance of the evidence,"[8] and "[a] presentencing report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines."[9] The district court "may adopt the facts contained in a [presentence report] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable."[10] "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue."[11]

---

[7] U.S.S.G. § 3E1.1 provides:

(a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

[8] United States v. Hill, 258 F.3d 355, 357 (5th Cir. 2001).

[9] United States v. Fitzgerald, 89 F.3d 218, 223 (5th Cir. 1996).

[10] Cabrera, 288 F.3d at 173-74.

[11] United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995).

Trujillo contends that his stepfather's testimony at the sentencing hearing rebutted the facts set forth in the PSR and proved that he did not willfully give a false statement to the probation officer regarding his citizenship. The PSR stated:

> [D]uring the Presentence Report interview, the defendant told this officer that he was born in Fort Worth, Texas. However, this officer, while reviewing the defendant's file contained within the Tarrant County Juvenile Probation Department, discovered the defendant's Mexican birth certificate which indicated he was born in Guanajato, Mexico. . . . The defendant was untruthful in reference to his place of birth . . . .

After Trujillo objected to this finding in the PSR, the probation officer added an addendum to the PSR which stated:

> The defendant's information concerning his lack of knowledge about his citizenship is uncorroborated at this point. The issue of whether the 2-level increase of Obstruction of Justice applies and denial of the 3 levels for Acceptance of Responsibility remain in dispute and shall be resolved by the Court at the sentencing hearing.

At the sentencing hearing, Trujillo's stepfather testified that Trujillo was born in Mexico and was not his biological son but that Trujillo did not know his stepfather was not his biological father until this sentencing hearing. His stepfather began raising Trujillo as his son in the United States when Trujillo was three years old. His stepfather also testified that he told Trujillo at age five that Trujillo had been born in Mexico, but later, after "people [] were psychologically damaging him and bothering him about that," he told Trujillo to "tell them that you're from Forth Worth so they don't bother you anymore." At the end of his testimony, Trujillo's stepfather stated that he never discussed the issue with Trujillo again and that Trujillo believed that he was actually born in Forth Worth: "Yes, he believed that. He thought that way, he acted that way, and he lived that way, yes."

The district court rejected the stepfather's conclusion that Trujillo came to believe he was born in Fort Worth, apparently relying on the fact that Trujillo was told he was born in Mexico and was told to lie about his place of birth. The court determined that Trujillo intentionally made a false statement:

> I'm satisfied the defendant knew he was born in Mexico. The witness's testimony, though his last answer was calculated to imply otherwise, the witness's testimony makes clear that the defendant knew he was born in Mexico. . . . The defendant has always known he was born in Mexico, and he intentionally misrepresented his place of birth to the probation officer.

The district court had the opportunity to judge the credibility of the witness, and based on the deference we must give to that determination and based on the record evidence, the district court's finding is not implausible and was not clearly erroneous.

Trujillo contends that the district court erred in applying the obstruction enhancement because his false statement to the probation officer was not material, asserting "it only affects whether the Court enters an order for the defendant to be turned over to immigration for deportation." The district court rejected this argument stating, "That's pretty material."

"The Guidelines Manual does not define 'obstruct,' but the application notes to § 3C1.1 provide some guidance as to the type of conduct to which the obstruction enhancement applies."[12] One of the examples listed in the application notes to U.S.S.G. § 3C1.1 as a type of conduct to which the obstruction enhancement applies is "providing materially false information to a probation officer in respect to a presentence or other investigation for the court."[13] The enhancement is not appropriate, however, if the defendant "provid[es] incomplete or misleading information, not amounting to a material

---

[12] United States v. Greer, 158 F.3d 228, 234 (5th Cir. 1998).

[13] U.S.S.G. § 3C1.1 cmt. n.4(h) (2005).

falsehood, in respect to a presentence investigation."[14] "Material" is defined as "information that, if believed, would tend to influence or affect the issue under determination."[15]

Trujillo contends that his false statement regarding his citizenship was not material because it did not affect his advisory Guidelines imprisonment range, his fine range, or the length of his supervised release. He argues that it would only affect whether the district court ordered as a part of supervised release that Trujillo be released to immigration officials for deportation proceedings.[16] Trujillo also asserts that even if a provision ordering Trujillo to be released to immigration officials had not been included in his sentence, he nevertheless would have been subjected to deportation upon his release from prison.

Trujillo additionally asserts that the district court erred in applying the obstruction of justice enhancement because his false statement did not significantly impede the presentence investigation. Trujillo relies on the unpublished opinion United States v. Spooner[17] to support his argument. In Spooner, a panel of this court held that a defendant's false statements to a probation officer during the presentence investigation must significantly impede the investigation in order to warrant an obstruction of justice enhancement.[18]

---

[14] Id. cmt. n.5(c).

[15] Id. cmt. n.6.

[16] See 18 U.S.C. § 3583(d) ("If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.").

[17] 83 F. App'x 626, 629-30 (5th Cir. 2003) (per curiam).

[18] Id.

We first note that Spooner is not binding precedent.[19]  Nor is it persuasive authority.   The Spooner decision did not consider the difference between application note 4(g), which applies to "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense,"[20] and application note 4(h), which applies to "materially false information [provided] to a probation officer in respect to a presentence or other investigation for the court."[21]  The latter governs Trujillo's false statement, and note 4(h) does not contain note 4(g)'s requirement that a materially false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense."[22]  The touchstone in 4(h) is simply "materially false information."[23]

Other provisions of the application notes to U.S.S.G. § 3C1.1 likewise reflect the dichotomy between false statements to arresting or prosecuting officers and false statements to probation officers conducting a presentence investigation.   The application notes to U.S.S.G. § 3C1.1 provide "a non-exhaustive list of examples of the types of conduct" that will not give rise to the enhancement.[24]   Included among those are "providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant

---

[19] See 5TH CIR. R. 47.5.4.

[20] U.S.S.G. § 3C1.1 cmt. n.4(g) (2005).  See also United States v. Ahmed, 324 F.3d 368, 372-73 (5th Cir. 2003) (holding that a defendant's false statements to the FBI denying he knew four aliens who had entered illegally were material but did not significantly impede the investigation, within the meaning of application note 4(g), because the investigating officers already had information that permitted them to locate the illegal aliens promptly).

[21] Id. cmt. n.4(h).

[22] Id. cmt. n.4(g).

[23] Id. cmt. n.4(h).

[24] U.S.S.G. § 3C1.1 cmt. n.5 (2005).

8

offense,"[25] and "making false statements, not under oath, to law enforcement officers, unless Application Note 4(g) above applies."[26] By contrast, materiality is the only determining factor with regard to false statements to a probation officer conducting a presentence investigation: "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation."[27]

Trujillo's false statement regarding his citizenship was material, as that term is defined in the application notes to U.S.S.G. § 3C1.1.[28] If believed, the false statement would have affected the terms of his supervised released regarding deportation.

Trujillo cannot escape the application of note 4(h) simply because the probation officer learned of the falsity of Trujillo's statement when Trujillo's birth certificate was discovered among the records in a prior juvenile proceeding. The Sixth Circuit was confronted with a similar contention in United States v. Bruce, and its reasoning is sound:

> [W]e reject Defendant's proposed "no harm, no foul" gloss upon this guideline, under which a defendant would be free to provide materially false information without penalty so long as the probation officer is able to promptly establish that the information is false. The guideline, after all, is triggered by either actual or "attempted" obstructions of justice, indicating that the proper focus is on the defendant's conduct rather than the probation officer's success in conducting a presentence investigation despite the misinformation provided by the defendant. Likewise, the commentary accompanying this guideline emphasizes that

---

[25] Id. cmt. n.5(a).

[26] Id. cmt. n.5(b) (referring to the requirement in 4(g) that the false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense").

[27] Id. cmt. n.5(c).

[28] Id. cmt. n.6.

information is "material" where, "if believed, [it] would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n.6 (emphasis added). It follows, therefore, that the guideline is applicable even though a probation officer might not have believed the defendant's false assertion or, as here, was able to quickly disprove it.[29]

The application notes to U.S.S.G. § 3C1.1 directly address Trujillo's situation. Because Trujillo made a materially false statement to a probation officer conducting a presentence investigation, the obstruction enhancement applies regardless of whether that statement actually impeded the presentence investigation.

### III

In his briefing, Trujillo states that he is appealing the district court's failure to apply a reduction for acceptance of responsibility. However, he did not discuss that issue or cite any authority. At oral argument, Trujillo's counsel alluded to an argument that although Trujillo's false statement might have warranted an obstruction of justice enhancement, it was not the type of conduct to also warrant a denial of a reduction for acceptance of responsibility. Trujillo, however, has waived this argument because he failed to address it adequately in his briefing before this court.[30]

### IV

Trujillo also contends that his 84-month sentence is unreasonable. He argues that his statement to the probation officer that he was born in Fort Worth resulted in a five-level increase to his offense level, which he contends is "truly outrageous" because his statement did not impede the presentence investigation, he pleaded guilty to the indictment, he cooperated with the

---

[29] United States v. Bruce, 396 F.3d 697, 712-13 (6th Cir. 2005), vacated on other grounds, 405 F.3d 1034 (6th Cir. 2005), cert. denied, 546 U.S. 954 (2005).

[30] See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

Government, his cooperation led to the arrest of another individual, and he had a category I criminal history. Post-Booker, we review a sentence for unreasonableness, considering the factors in 18 U.S.C. § 3553.[31] If the sentencing court, however, "exercises [its] discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines."[32] Because we owe great deference to a sentencing judge's discretion, "it will be rare for a reviewing court to say such a sentence is 'unreasonable.'"[33]

The advisory Guideline range was 78 to 97 months of imprisonment, and the district court imposed a sentence of 84 months. Trujillo has presented no compelling reason and has cited no authority to support a determination that this sentence is unreasonable. In our reasonableness review, therefore, we hold that the district court committed no reversible error.

* * * * *

For the foregoing reasons, we AFFIRM Trujillo's conviction and sentence.

---

[31] United States v. Mares, 402 F.3d 511, 518-19 (5th Cir. 2005).

[32] Id. at 519.

[33] Id.