REVISED February 12, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-20533

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MARCO ANTONIO BALDERAS-GONZALEZ

Defendant-Appellant

Appeal from the United States District Court for the
Southern District of Texas
(USDC No. 4:07-CR-99-ALL)

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

Wiener, Circuit Judge:[*]

Defendant-Appellant Marco Antonio Balderas-Gonzalez ("Balderas") pleaded guilty to transporting an illegal alien within the United States for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). At sentencing, the district court imposed a two-level enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

person" because three illegal aliens were found to be in the trunk of the car that Balderas was driving. Balderas appeals his sentence, arguing that the district court clearly erred in enhancing his sentence without evidence that Balderas knew or had reason to know that, in addition to himself and the others who were inside the car, three more aliens had been loaded into the trunk of the vehicle before he was given the keys and asked to drive it. We agree.

## I. Facts & Proceedings

In late February 2007, a Texas Department of Public Safety Trooper observed a Ford Taurus speeding northbound on Highway 59, just south of Pierce, Texas. The Trooper, who was traveling southbound, turned his vehicle around and activated his emergency lights. The Taurus slowed and stopped at the right shoulder of the road. Immediately after coming to a stop, the passenger doors opened, and four individuals got out and started running towards abandoned railroad tracks and heavy brush. After these four occupants (one of whom was Balderas) were apprehended, a search of the vehicle revealed three more male subjects hidden in the trunk.

All seven occupants of the vehicle were undocumented immigrants. The three individuals who were traveling in the passenger compartment of the Taurus with Balderas identified him as the driver of the Taurus, which he freely confirmed. The three individuals who were traveling in the trunk were unable to identify Balderas as the driver. Balderas stated that he was one of several aliens who had been smuggled into the United States sometime previously, and that earlier that day he had been approached by one of the smugglers and offered a $1,000 discount from his $1,500 smuggling fee if he would drive a vehicle containing other illegal aliens—and he accepted the offer. There were no recordings or transcriptions of the discussion at the scene of the arrest.

Three weeks later, Balderas pleaded guilty to transporting an alien in the United States for commercial or private financial gain by means of a motor

vehicle, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Using the 2006 version of the sentencing guidelines, the probation department recommended, inter alia, a two-level upward adjustment for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person because the offense involved transporting aliens in the trunk of the vehicle. Balderas objected to the recommendation on the basis that he had no idea that aliens had been loaded into the trunk of the Taurus. According to Balderas, he was handed the keys to the car after the car had already been loaded, told to drive it, following the lead car driven by the "coyotes." The probation officer defended the two-level enhancement by stating that "[s]ince the defendant traveled with this group of aliens, it is possible that the defendant was present when the aliens were being loaded and that he would have seen some aliens get into the trunk. Additionally, during an alien smuggling offense, it is not uncommon and it is reasonably foreseeable, that aliens would travel in any available space, including the trunk."[1] The probation officer went on to note that "[t]he court may wish to consider whether the guideline application in this case accurately represents the true seriousness and harm [of the offense]."

At sentencing, Balderas restated his objection to the reckless endangerment enhancement and requested a below-guidelines sentence of time served to six months. The district court rejected Balderas's objection and stated that it was "relying on the presentence report" to establish that he knew or should have known that aliens were in the trunk of the Taurus.

## II. Discussion

### A. Standard of Review

---

[1] (emphasis added).

We review the district court's application of the sentencing guidelines de novo, and its factual findings for clear error.[2]

B. Analysis

Federal sentencing guidelines provide for a two-level sentence enhancement if "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."[3] Commentary to the guidelines states that "reckless conduct" includes "a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle . . . )."[4] The government bears the burden of proving, by a preponderance of the evidence, the factors for enhancement under the sentencing guidelines.[5]

Neither party disputes that transporting aliens in the trunk of a car presents a substantial risk of death or serious bodily injury. So, the only issue for our review is whether Balderas intentionally or recklessly created the risk of harm. The government contends that he did thus create the risk of harm because he knew or should have known that aliens had been loaded into the trunk of the Taurus. In its effort to support this argument (and in the absence of any direct evidence), the government relies on the facts that (1) Balderas traveled with a group of aliens for several days prior to driving the vehicle, (2) he was present during daylight hours at the location where the aliens were loaded into the Taurus, and (3) there is no evidence that he was not present when the three males got into the trunk of the car.

---

[2] United States v. Ho, 311 F.3d 589, 608 (5th Cir. 2002).

[3] U.S.S.G. § 2L1.1(b)(6).

[4] U.S.S.G. § 2L1.1 cmt. n.5.

[5] United States v. Trujillo, 502 F.3d 353, 357 (5th Cir. 2007).

Balderas does not dispute that he was present at the general location where he and the other illegal aliens got into the Taurus, or that he had traveled with some of the aliens for many days prior to driving the Taurus. Balderas has insisted all along, however, that he did not witness the loading of the three aliens into the trunk of the car. This contention is supported by statements in the PSR that Balderas "was given the keys to the vehicle after it was already loaded, and told to drive." Additionally, the PSR states that Balderas had a minimal role in the conspiracy and that his knowledge of the operation appeared to be "limited." As nothing in the record describes the location where the taurus was loaded, therefore, neither we nor the sentencing court may infer that Balderas saw anyone get into the trunk of the vehicle, or where they had done so, simply because he and three others got into the car somewhere during daylight hours immediately before he drove off.

At oral argument, the government asserted that the phrase "loaded with aliens," which is used to describe the Taurus in the PSR and the complaint, evidences Balderas's knowledge of the aliens. We cannot agree. Although the word "loaded" might indicate that aliens were placed in any available space (including the trunk), it is equally probable that the word was used to indicate simply that the vehicle contained cargo, i.e., that it was not empty. Furthermore, it is anything but clear that the word "loaded" was actually used by Balderas, who speaks no English. This phrase was not included in the translated written statement prepared for him; it only appears in the PSR and the complaint. We may not infer Balderas's knowledge without evidence that the specific word he used was properly translated, or that he used it to imply that the car was "at maximum capacity," and not just that human cargo had been placed in the car.

Alternatively, the government insists that, even if Balderas did not witness the entry of the aliens into the trunk of the Taurus, he should have

known that aliens were in the trunk because three of the aliens who had been traveling in his group were not with him in the passenger compartment of the Taurus. There is no evidence in the record to suggest that Balderas had been traveling with precisely six other aliens, or that all of the aliens were transported at the same time. Additionally, Balderas contends that he was following another car, which could have contained other aliens from his group, at the time he was apprehended. Although there is no evidence in the record, aside from Balderas's statement, to support his assertion that there was another vehicle, even the special agents acknowledged that Balderas was nothing but fully candid and credible about his involvement in the smuggling operation. The government offered no evidence to cast doubt on Balderas's statement that he was following another car.

Our review of the evidence in the record reveals only the mere possibility that Balderas knew or should have known that aliens were loaded in the trunk of the Taurus. And, a mere possibility is insufficient to meet the government's burden of proving, by a preponderance of the evidence, that Balderas intentionally or recklessly created a substantial risk of death or serious bodily injury under 2L1.1(b)(6).

In yet another alternative argument, the government advances that Balderas should be held accountable for transporting aliens in the trunk of the Taurus because, under U.S.S.G. 1B1.3(a)(1)(B), a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," regardless of whether the defendant was charged with conspiracy. To be held accountable under this provision, though, the conduct sought to be attributed to the defendant must occur after the defendant joined the conspiracy.[6] Therefore, Balderas is only accountable under

---

[6] United States v. Reinhart, 357 F.3d 521, 528 (5th Cir. 2004).

Section 1B1.3(a)(1)(B) if he joined the conspiracy prior to the time these three male aliens got into the trunk of the vehicle. The record is devoid of evidence or inference that he had.

The district court did not entertain the government's conspiracy argument at sentencing; therefore, it did not make a factual finding regarding when Balderas joined the conspiracy. Our review of the record leads us to conclude that there is insufficient evidence to prove that Balderas agreed to drive the Taurus—and entered the conspiracy—prior to the loading of the trunk of the vehicle. Therefore, Balderas cannot be held accountable under 1B1.3(a)(1)(B).

## III. Conclusion

The district court clearly erred when it enhanced Balderas's sentence under 2L1.1(b)(6) without evidence that he knew or should have known that he was transporting aliens in the trunk of the Taurus. We therefore VACATE the sentence imposed by the district court, and REMAND for resentencing in accordance with this opinion. Because Balderas has already served most of his sentence and has but a couple of months remaining to be served, we urge the district court to expedite disposition of this matter on remand.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

In the light of the district court's finding, based, inter alia, on the presentence investigation report (PSR), that Balderas intentionally or recklessly created a substantial risk of death or serious bodily injury, and our reviewing that finding only for clear error, I would affirm the sentence imposed by the district court. For example, pursuant to Balderas' written statement, the PSR stated that Balderas was "asked . . . if he was interested in driving a car loaded with illegal aliens". (Emphasis added.) It is not clearly erroneous to find this indicated more persons were in the vehicle than just on the front and back seats. In short, under the well-established standards for a district judge to adopt the PSR, it was not clearly erroneous to find Balderas knew, or should have known, illegal aliens were in the trunk. I respectfully dissent.