IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-10275

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RICKY RICARDO TELLES

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CR-119

Before SMITH and PRADO, Circuit Judges, and LUDLUM, District Judge.[*]

PER CURIAM:[**]

Defendant-Appellant Ricky Ricardo Telles ("Telles") appeals the sentence he received after pleading guilty to theft or receipt of stolen mail in violation of 18 U.S.C. § 1708. Because the district court did not clearly err in determining that Telles's offense involved at least 250 victims, we AFFIRM Telles's sentence.

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At 3:45 a.m. on December 6, 2005, a Grand Prairie police officer witnessed Telles driving suspiciously around an apartment complex. The officer followed Telles for a short time and eventually pulled him over. Telles gave the officer a false name, and a records check revealed outstanding warrants for that individual. After being arrested, Telles informed the officer of his real name, but a check of that name, too, revealed outstanding warrants. While conducting an inventory of Telles's vehicle, another officer came across a box with 141 pieces of mail in it from two separate apartment complexes in Grand Prairie. None of the mail was addressed to Telles.

Investigating further, the police discovered that two sets of panel mailboxes had been broken into at the first apartment complex. Each panel contained thirty-five individual mailboxes. At the second apartment complex, eight panel mailboxes had been broken into, with each containing thirty-five individual mailboxes. Thus, in total, Telles broke into 350 mailboxes. When questioned by police, Telles claimed he was working for two individuals named Shauna and Robert, who were paying him to drive Robert around so that Robert could steal mail. The police never saw any sign of Robert at any of the apartment complexes.

On April 19, 2006, a grand jury indicted Telles on a single count of theft or receipt of stolen mail matter in violation of 18 U.S.C. § 1708. Telles pleaded guilty to the count on October 10, 2006, at which time he admitted to having at least one piece of stolen mail in his possession. The district court accepted his guilty plea and set a date for sentencing.

The Presentence Report ("PSR") calculated Telles's base offense level at six pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2B1.1(a)(2). The PSR then recommended that the offense level be increased by six levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(C) because the offense involved 250 or more

victims. Subtracting two points for acceptance of responsibility, the total offense level was ten. Combined with Telles's criminal history score of VI, Telles's sentencing range was twenty-four to thirty months.

At the sentencing hearing, Telles objected to the increase of his offense level by six levels on the basis that his crime involved 250 or more victims. Telles argued that, because he was found with only 141 pieces of mail, the number of victims was substantially less than 250. The district court overruled Telles's objection and sentenced him to thirty months' imprisonment.[1] Telles appealed.

## II. DISCUSSION

### A.     Standard of Review

This court reviews a district court's application of the Guidelines de novo and its factual findings for clear error. United States v. Trujillo, 502 F.3d 353, 356 (5th Cir. 2007). "If the district court's account of the evidence is plausible in light of the record when viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." United States v. Angeles-Mendoza, 407 F.3d 742, 750 (5th Cir. 2005) (internal quotation marks omitted).

### B.     Analysis

Telles argues on appeal that the district court incorrectly found that his offense involved more than 250 victims. Telles bases this argument on the fact that the police found him with only 141 pieces of mail and the fact that there was a short amount of time between his presence at the apartment complexes and his arrest. The Government counters that Telles could have disposed of some of the stolen mail or given it to his alleged accomplice prior to his arrest.

---

[1] Had the district court accepted Telles's argument, Telles's offense level would have been increased by four, instead of six. See U.S.S.G. § 2B1.1(b)(2)(B) (authorizing four-level increase for crimes with fifty or more victims). This would have given Telles a sentencing range of eighteen to twenty-four months.

To begin our analysis, we turn to the commentary following U.S.S.G. § 2B1.1, which sets out specific rules with respect to theft of mail from panel or cluster boxes.[2]  The commentary states as follows:

> [A] housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.

U.S.S.G. § 2B1.1, comment n.4(C)(ii)(II).  Thus, the district court should have presumed there were 350 victims, based on the number of individual mailboxes within the panel units, and placed the burden on Telles to "prove[] otherwise." There is no suggestion by the parties that the district court did not apply this standard, so our inquiry is confined to whether the district court clearly erred in determining that Telles did not prove that there were fewer than 250 victims of his mail theft offense.

There is no published authority interpreting this portion of the Guidelines' commentary.  In the only unpublished decision on point, the Eleventh Circuit rejected a defendant's claim that he had successfully rebutted the presumption created by the commentary.  United States v. Niewald, 185 F. App'x 839 (11th Cir. 2006) (per curiam).  In Niewald, the evidence showed that the defendant had broken into 4000 mailboxes, but the postal inspector had received only 150 complaints of stolen mail.  Id. at 841.  The Eleventh Circuit held that the district court did not commit reversible error in determining that this evidence was not sufficient to prove that there were fewer than 250 victims.  Id.

The only Fifth Circuit case regarding the number of victims involved when a panel mailbox is broken into is United States v. Gray, 71 F. App'x 300 (5th Cir.

---

[2] Although the Guidelines are advisory, the commentary's interpretation of the Guidelines generally is authoritative.  United States v. Austin, 479 F.3d 363, 367 (5th Cir. 2007); see also Stinson v. United States, 508 U.S. 36, 42-43 (1993).

2003) (per curiam), in which the court placed the burden on the Government to prove the number of victims. Id. at 301 (finding that evidence of the number of mailboxes in a panel was not sufficient to prove the number of victims). The decision is inapplicable to our case, however, because Gray was decided prior to the inclusion of the presumption in the commentary in 2004. Consequently, it does not counsel us one way or the other.

When the Guidelines were amended to include the presumption in the commentary, the Sentencing Guidelines Commission articulated its reason for the presumption as follows:

> (i) unique proof problems in that once entry is gained to such a cluster box and mail is removed, it is difficult to determine the number of persons from whom mail was stolen; (ii) the frequently significant, but difficult to quantify, non-monetary losses; and (iii) the importance of maintaining the integrity of the United States mail service.

U.S.S.G. app. C, Amendment 674; see also U.S.S.G. app. C, Amendment 617. Mindful of the presumption's purpose, we turn to the evidence in this case.

As noted above, Telles relies on the fact that only 141 pieces of mail were found in his possession as evidence that there were fewer than 250 victims. The Government responds that Telles could have discarded some of the mail or split it with the undiscovered accomplice with whom Telles claimed he was working. Telles replies that disposal was unlikely because there was only a short period of time between when the officer first noticed him and when he was arrested. This assertion is undermined, however, by the fact that the officer first noticed Telles at a third apartment complex (located at 1750 West Tarrant Road), which was different from the two complexes from which Telles stole mail (located at 1919 West Tarrant Road and 1920 West Tarrant Road). Thus, the amount of time in which Telles had to dispose of stolen mail is unclear. Further, Telles makes no response to the suggestion that his alleged accomplice may have absconded with some of the mail.

In sum, while it is plausible that Telles's crime had fewer than 250 victims, it is also plausible that there were more than 250 victims. The burden was on Telles to prove a lower number of victims, and the district court did not clearly err in finding that Telles failed to do so. Consequently, we AFFIRM Telles's sentence.

### III. CONCLUSION

Because Telles failed to demonstrate clear error in the district court's determination of the number of victims of Telles's crime, we AFFIRM Telles's sentence of thirty months' imprisonment.

AFFIRMED.